[No. A025816. Sixth Dist. Sept. 18, 1985.]

SANTA CLARA COUNTY ENVIRONMENTAL HEALTH
ASSOCIATION et al., Plaintiffs and Respondents, v.
COUNTY OF SANTA CLARA et al., Defendants and Appellants.

COUNSEL

Donald L. Clark, County Counsel, and Richard K. Abdalah, Deputy County Counsel, for Defendants and Appellants.

Craig M. Brown for Plaintiffs and Respondents.

OPINION

PREMO, J.*—The County of Santa Clara (County) appeals from a judgment granting the Santa Clara County Environmental Health Association's (Association) petition for writ of mandate. For reasons explained below, the judgment is affirmed.

*Facts*

The relevant facts are as follows:

The Association is a recognized employee organization authorized to represent its members, environmental sanitarians, in labor negotiations with the County. From July 1, 1979 through June 30, 1982, the salaries of those employees represented by the Association were fixed pursuant to a memorandum of agreement (MOA). The MOA set wages for the Association's membership for fiscal years 1979-1980, 1980-1981, and 1981-1982. The contract did not provide salary increases for fiscal year 1982-1983, but did include a provision extending the MOA on a year-to-year basis after June 30, 1982, unless either party had given 60 days notice of an intent to re-negotiate the agreement. Inadvertently, the Association failed to give the full 60-day notice, and thereafter, the County contended that the failure of timely notice had triggered an automatic one-year extension of the MOA. The County, therefore, refused to enter into negotiations for a new contract and granted no wage increases for fiscal year 1982-1983.

As a result, the Association commenced a mandamus proceeding in Santa Clara County Superior Court to compel the County to negotiate. That action was dismissed with prejudice pursuant to an agreement between the parties that negotiations for fiscal year 1982-1983 would be undertaken simultaneously with those negotiations directed towards reaching an agreement for fiscal year 1983-1984 (for which notice had been timely given).

---

*Assigned by the Chairperson of the Judicial Council.

During the course of these negotiations, the Association steadfastly maintained that section 709 of the county charter[1] required the County to fix and pay wages commensurate with those prevailing *within* the County for comparable work. To this end, the Association provided certain information regarding other sanitarian positions *within* the county.[2] County negotiators rejected these positions on the ground that they were not "directly comparable," and contended that there were *no* comparable positions within the county. Instead, the County focused on available funds and *out-of-county* comparisons.

On July 25, 1983, the board of supervisors (Board), in executive session, was presented with an information packet supplied by the county negotiating team. This packet included, inter alia, the list of positions presented by the Association, information relating to the overall cost to the County of the environmental staff, the consumer price index for the period from February 1980 to June 1983, and a salary comparison of County sanitarians with environmental sanitarians of other counties. County negotiators recommended to the Board that it should rely primarily upon the comparison of the salaries of sanitarians in *other* counties, and further advised the Board that the positions within Santa Clara County asserted by the Association as comparable were not directly comparable.[3] Finally, County negotiators, de-

---

[1]Section 709 of the Santa Clara County Charter provides as follows: "Rates of pay *shall* be fixed by the Board of Supervisors which are commensurate with those prevailing *throughout the county* for comparable work. Rates of pay fixed pursuant to an agreement between the Board of Supervisors and a recognized employee organization shall be conclusively presumed to be commensurate with those prevailing throughout the county for comparable work and no action may be brought against the county or any county officer alleging that said rates of pay are not comparable." (Italics added.)

[2]The Association obtained job descriptions and salary information from the cities of San Jose and Santa Clara. They also provided information pertaining to sanitarian positions in the private sector.

[3]The following stipulation of facts was filed with the court: ". . . On July 25, 1983, the Santa Clara County Board of Supervisors in executive session was presented a packet of information from its Employee Relations staff relating to the wages of the Santa Clara County Environmental Health Association members. Except for the documents contained in the packet, the County staff has no reason to believe that any other documentary information was presented to the Board of Supervisors for its consideration in regard to the salaries of association members. The packet contained information relating to the overall cost to the County of the environmental staff, social security taxes paid by the County, the Association's staffing profile, the consumer price index for the period from February of 1980 to June 1983, a salary comparison of the County of Santa Clara Environmental Sanitarians with salaries of such county sanitarians in other counties, a list of job comparisons from within Santa Clara County compiled by the Association, various economic and non-economic proposals, job descriptions for positions held by Association members, and notes and other data relating to other positions asserted by the Association to be comparable. [¶] The County Employee Relations staff made a salary recommendation to the Board of Supervisors that it rely primarily upon the comparison of the salaries of such sanitarians in other counties and it further advised the Board that the positions within Santa Clara County that the Association

pending principally upon salary figures from other counties—figures which were at least one year out of date—recommended that members of the Association be given a four percent salary increase for fiscal year 1983-1984.

At the regular meeting following the executive session, the Board passed an ordinance granting Association members a four percent raise.[4] The ordinance referred to the language in section 709 of the charter and stated that the wage increases therein were commensurate with those prevailing throughout the County for comparable work. Contending that the County had not complied with the mandates of section 709, the Association initiated the underlying action.

---

asserted were comparable to its own, were not directly comparable. [¶] At the regular meeting following the executive session, the Board of Supervisors passed an ordinance granting the new members of the Association a four percent (4%) raise. . . ."

[4] The ordinance (No. NS-5.83.11) stated as follows:

"WHEREAS, the Environmental Health Association is the recognized representative of the employees in the Registered Sanitarians Unit; and [¶] WHEREAS, the County and the Association have met and conferred in good faith since May of 1983 regarding a new contract; and [¶] WHEREAS, on June 30, 1983 the Association declared impasse in negotiations; and [¶] WHEREAS, on July 18, 1983 the County and the Association met with a mediator from the State Conciliation Service and the parties were unable to resolve their differences; and [¶] WHEREAS, the Association stated they would not object to unilateral action by the County; and [¶] WHEREAS, effective wage rates for these classifications are lagging behind comparable rates as shown on the wage comparison provided the Board on July 25, 1983.

"NOW THEREFORE BE IT RESOLVED, FOUND AND ORDERED AS FOLLOWS: [¶] 1. There is no current valid bilateral agreement covering the Registered Sanitarian Unit. [¶] 2. The County and Association have met and conferred in good faith regarding an agreement. [¶] 3. The Association declared impasse on June 30, 1983. [¶] 4. The Association has stated it will not object to unilateral action by the County. [¶] 5. Wages in the Registered Sanitarian Unit are lagging behind comparable rates. [¶] 6. The adjustments listed herein are necessary to provide competitive wages consistent with past practices and prevailing wage provisions of the charter. [¶] 7. Employees in the Registered Sanitarians Unit shall be covered by the Merit System Rules, Personnel Practices, the Salary Ordinance, Policies and Procedures and the Charter. [¶] 8. To remain competitive the County should continue to pay the employees' share of Social Security and 2% of the employees' share of PERS.

"BASED ON THE FOREGOING, THE BOARD OF SUPERVISORS OF THE COUNTY OF SANTA CLARA, STATE OF CALIFORNIA, DOES ORDAIN AS FOLLOWS: [¶] *Section 1*: [¶] Acting pursuant to Section 709 of the Charter and based upon competent evidence submitted to the Board of Supervisors, it is hereby found and determined that the wages established herein are commensurate with those prevailing throughout the County for comparable work. The Board of Supervisors further finds that it has fully complied with the requirements of the Meyers-Milias-Brown Act. [¶] *Section 2*: [¶] Notwithstanding the provisions of the Ordinance NS-5.83, all salaries for all classifications in the Registered Sanitarians Unit shall be increased approximately 4% on August 15, 1983. In addition the County will continue to pay the employees' share of Social Security and 2% of the employees' share of PERS. [¶] *Section 3*: [¶] This Ordinance shall be operative on an urgency basis on and after the dates listed in Section 2. [¶] *Section 4*: [¶] This Ordinance is an urgency measure necessary for the immediate preservation of public peace, health or safety and shall go into immediate effect. The facts constituting such necessity are: those facts recited and found above, this Board finding that they require these adjustments as described.

"PASSED AND ADOPTED by the Board of Supervisors of the County Santa Clara, State of California, this Aug 02 1983 by the following vote. . . ."

After two days of trial, the trial court announced its intended decision in favor of the Association and reasoned: (1) as there was no agreement for two fiscal years on salaries for the members of the Association, the commensurate salary provision of section 709 was effectuated;[5] (2) that section 709 mandates salary rates commensurate with, i.e., equal to, those prevailing throughout the county: "That's Santa Clara County. *Not other counties, for comparable work*" (italics added); (3) that "comparable work" does *not* mean *identical;* (4) that evidence presented by the Association established the existence of other comparable occupations within the County;[6] (5) that it was the County's duty to determine the prevailing rate; and (6) that the County made no effort to determine or pay the prevailing rate for comparable work within the county for the two fiscal years in question.[7]

The court further found that the Board's actions in this case were arbitrary and capricious. And, with respect to the language of the ordinance purporting to make certain findings, the court concluded that those findings were not supported by "substantial [evidence] or *any* evidence."

A formal statement of decision was filed on December 20, 1983, and judgment entered the same day. On January 4, 1984, a peremptory writ of mandate issued directing the County: "1. To comply with Article VII, Section 709 of the Charter of Santa Clara County and to grant to Petitioners such increase in salary for fiscal years 1982-1983 and 1983-1984 as will be in compliance with said Charter provision. In so doing, you shall determine the rate of pay prevailing throughout Santa Clara County in fiscal years 1982-1983 and 1983-1984 for work comparable to that of Petitioners, and shall then fix a rate of pay for Petitioners which is commensurate to that rate. [¶] 2. To pay to Petitioners at the legal rate of ten percent [10%] per annum on 1982-1983 salary increases from July 1, 1982 until paid, and on 1983-1984 salary increases from July 1, 1983 until paid. [¶] 3. To pay to Petitioners attorneys fees in the sum of Fifteen Hundred Dollars [$1,500]. [¶] 4. To pay to Petitioners their costs in this action according to proof. . . ." This appeal followed.

---

[5]The failure of the Association to give 60 days notice and the resulting automatic extension of the MOA is a theme which, though appearing throughout the County's briefs, never achieves the status of a full-blown argument. Nevertheless, we wish to lay that argument to rest. As noted above, the trial judge specifically found that there was no agreement for two fiscal years, 1982-1983 and 1983-1984. Suffice it to say the court's conclusion is supported by substantial evidence. The MOA, then, was *not* in force for fiscal year 1982-1983.

[6]The Association presented overwhelming evidence that there were comparable positions within the county. Sanitarians from the cities of San Jose, Santa Clara and the County of Santa Clara testified that the job qualifications and duties were extremely similar, if not virtually identical.

[7]The County made no attempt to actively solicit or seek out comparable positions within the county. Not even a phone call was made to other public employers within the county.

*Discussion*

On appeal, the County contends: (1) that the trial court had no authority to interfere with the Board's exercise of legislative discretion in establishing prevailing wages and adopting a salary ordinance; (2) that the trial court erred in concluding that the county charter prohibits the Board from considering wages earned by employees in comparable positions in other counties; (3) that the question of salaries for fiscal year 1982-1983 was res judicata; and (4) that the court erred in granting the Association prejudgment interest.

At the outset, we briefly recount the familiar axioms of appellate review. "[A]ll factual matters will be viewed most favorably to the prevailing party . . . and in support of the judgment [citation]." (*Nestle* v. *City of Santa Monica* (1972) 6 Cal.3d 920, 925 [101 Cal.Rptr. 568, 496 P.2d 480].) " 'In brief, the appellate court ordinarily *looks only at the evidence supporting the successful party, and disregards the contrary showing.*' . . . All conflicts, therefore, must be resolved in favor of the respondent. [Citation.]" (*Id.,* at pp. 925-926; italics in original.) " '[T]he power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the conclusion reached by the [court]. When two or more inferences can be reasonably deduced from the facts, the reviewing court is without power to substitute its deductions for those of the trial court. . . .' " (*Florez* v. *Groom Development Co.* (1959) 53 Cal.2d 347, 354 [1 Cal.Rptr. 840, 348 P.2d 200] citing *Crawford* v. *Southern Pacific Co.* (1935) 3 Cal.2d 427, 429 [45 P.2d 183].)

With these principles in mind, we turn our attention to the issues at hand.

I

We first dispose of the County's contention that the trial court's invalidation of the salary ordinance adopted by the Board constituted an improper interference with the legislative process. "The fixing of compensation for public employees is a legislative function. [Citations.]" (*Alameda County Employees' Assn.* v. *County of Alameda* (1973) 30 Cal.App.3d 518, 531 [106 Cal.Rptr. 441].) It is also well settled, however, that prevailing wage provisions such as section 709 of the Santa Clara County Charter constitute a positive limitation on the governing body's discretionary power to determine the rate of compensation. (*Ibid.*) Such provisions must be liberally construed in favor of the worker. (*Ibid.*)

Under section 709, it is clear that the Board has a mandatory duty, as the trial court found, to make a finding as to the prevailing wage. (*Walker* v. *County of Los Angeles* (1961) 55 Cal.2d 626, 634-635 [12 Cal.Rptr. 671, 361 P.2d 247].) ■ As the County recognizes, however, courts will not interfere with such decisions unless the action is "fraudulent or so palpably unreasonable and arbitrary as to indicate an abuse of discretion as a matter of law." (*City and County of San Francisco* v. *Boyd* (1943) 22 Cal.2d 685, 690 [140 P.2d 666].) ■ The thrust, then, of the County's argument is that the Board's actions in this case were not so unreasonable as to justify judicial intrusion. We disagree.

The evidence in this action, as noted by the trial judge, is ". . . completely one sided. The county made no effort to comply with this charter provision." As the court further noted in its statement of decision, "Petitioners presented evidence by way of witnesses and exhibits which showed without question that there were positions within Santa Clara County which could be used for comparison purposes and that such a comparison indicated to Petitioners, and should have indicated to Respondents, that Petitioners were grossly underpaid by perhaps 10% to 30% or even more. There was absolutely no evidence produced by Respondents to the contrary." It is clear that the County made no attempt to garner readily available information on comparable positions within the county. As noted above, County negotiators, in direct violation of the clear mandate of section 709, relied on salary comparisons of similar county employees *outside* of Santa Clara County and advised the Board to do likewise. The Board followed their recommendation and adopted a salary ordinance which authorized a *four percent increase.* It is this court's conclusion that such action was clearly unlawful, arbitrary, capricious, and an abuse of discretion. County's arguments to the contrary are hereby rejected.

## II

■ Next, the County avers that the trial court erred in ruling that section 709 precludes the Board from considering wages earned by employees in comparable positions in other counties. We reject this contention as well.

In its statement of decision, the court noted as follows: "There is an affirmative obligation on the Board of Supervisors and its staff to determine the prevailing wage within the County and to fix Petitioners' wages accordingly, without regard to what salaries are being paid to employees outside of Santa Clara County. *This does not mean that the Board is prohibited from considering a wide variety of information from a wide variety of sources in going through the process of determining the prevailing wage.*

The Board is free to consider any information which bears on the issue of the prevailing wage within Santa Clara County for similar work. *The only legal mandate of the Charter is that the salaries ultimately set by the Board meet the Charter requirement.*" (Italics added.)

The County seems to urge us to conclude that the geographic limitation contained within section 709 does not mean what it says. We are not persuaded by this logic. The language is clear. The County is free to consider, as the trial court held, a wide variety of sources in determining the prevailing wage, but must comply with the legal mandate of the charter provision, i.e., to fix wages "which are commensurate with those prevailing throughout the County for comparable work." (Santa Clara County Charter, § 709.)

## III

The County next contends that the question of wages for fiscal year 1982-1983 was barred by res judicata.

"A final judgment in a prior action between the same parties, . . . prevents the relitigation in a subsequent action between them of issues of fact, actually and necessarily litigated and determined between them in the prior action, though the causes of action in the two actions differ." (*Berry* v. *City of Santa Barbara* (1967) 248 Cal.App.2d 438, 445 [56 Cal.Rptr. 553].)

Testimony at trial indicated that an earlier suit, as noted above, had been filed and later dismissed with prejudice pursuant to an agreement between the Association and the County that negotiations for fiscal year 1982-1983 would be commenced along with negotiations for fiscal year 1983-1984. Except by way of argument, however, County has not presented any evidence to support its contention that the factual issues in the case at bench were finally litigated in the earlier action.[8]

It is well established law that the party asserting errors at trial has the burden of properly presenting his case and affirmatively showing the

[8]In fact, during the course of the trial, county counsel agreed that the issues in the underlying action covered both of the aforementioned fiscal years. On that subject, the following dialogue occurred at trial:

"The Court: Does the County agree this—the issues in this case cover '82-'83 and '83-'84?

"Mr. Abdalah: The issues in this case?

"The Court: Yes.

"Mr. Abdalah: You have to determine whether or not the County is paying in compliance with the Charter. The two years merge at this point."

errors complained of by providing an adequate record. (*Electronic Equipment Express, Inc.* v. *Donald H. Seiler & Co.* (1981) 122 Cal.App.3d 834, 858, fn. 13 [176 Cal.Rptr. 239]; *Rossiter* v. *Benoit* (1979) 88 Cal.App.3d 706, 712 [152 Cal.Rptr. 65].) ■ " 'A judgment or order of the lower court is *presumed correct.* All intendments and presumptions are indulged to support it on matters as to which the record is silent. . . .' [Citation.]" (*Rossiter* v. *Benoit, supra,* at p. 712, original italics.)

■ Significantly, the trial judge specifically addressed this question in his statement of decision: "The suggestions that the first petition for writ of mandate filed by Petitioners . . . is res judicata with respect to fiscal year 1982-1983, cannot be supported. That action did not involve the identical issues presently before the Court. Rather, the earlier action sought only to force the commencement of salary negotiations for fiscal year 1982-1983, and the evidence shows that the earlier action was dismissed pursuant to an agreement wherein the County agreed to undertake such salary negotiations for fiscal year 1982-1983 as part of the 1983-1984 negotiations. This was shown by both the testimony of Steve Brooks and the oral stipulation put on the record between counsel during trial." To elaborate on the trial court's reasoning, even if we were to assume that the earlier suit was predicated on section 709, that suit sought only to compel the county to act under the mandates of the charter provision, while the instant action deals with the County's wrongful methods of determination under section 709 and, therefore, could not possibly have been at issue in the previous litigation.

As the County has failed to present evidence to the contrary, we defer to the judgment of the trial court.

## IV

■ Lastly, County contends that the trial court erred in awarding the Association prejudgment interest. Once again, we are not persuaded by County's argument. As noted by the Association, there is clear authority to the contrary. Civil Code section 3287 provides: "(a) Every person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day, except during such time as the debtor is prevented by law, or by the act of the creditor from paying the debt. *This section is applicable to recovery of damages and interest from any such debtor, including the state or any county, city, city and county, municipal corporation, public district, public agency, or any political subdivision of the state.*" (Italics added.)

██ This code section represents an exception to the general rule that interest cannot be recovered against a state or municipality. (*Sanders* v. *City of Los Angeles* (1970) 3 Cal.3d 252, 262 [90 Cal.Rptr. 169, 475 P.2d 201].)

██ Nevertheless, County urges us to conclude that this statute is inapplicable since the damages in this case are not certain nor capable of being made certain. We disagree. As the Association argues, once the County complies with the order of the trial court and ascertains the appropriate prevailing wages for the fiscal years at issue, and grants members of the Association salaries fixed in compliance with that determination, the damages will have been ascertained and made certain. Interest then may be applied accordingly.[9]

The judgment is affirmed.

Agliano, Acting P. J., and Brauer, J., concurred.

---

[9]This court hopes that in the future, when evaluating whether or not to pursue appellate review, county counsel will give more serious consideration than it appears was given here, to the merits of the case in question. Even though it is clear from the record before us that the County made no attempt to comply with its statutory obligations, County chose to avail itself of the appellate process. Needless to say, the County's considerable resources should not be committed to such a course of action without due consideration.