[No. B194372. Second Dist., Div. Eight. Apr. 30, 2008.]

ENPALM, LCC, et al., Plaintiffs and Respondents, v.
TRACY P. TEITLER et al., Defendants and Appellants.

COUNSEL

Law Offices of Victor Jacobovitz, Victor Jacobovitz; Law Offices of Timothy V. Milner and Timothy V. Milner for Defendants and Appellants.

Neufeld Law Group, Timothy L. Neufeld and Alison E. Maker for Plaintiffs and Respondents.

OPINION

RUBIN, J.—Defendants Tracy P. Teitler, Teitler Investments, and the Teitler Family Trust appeal from the order reducing their award of contractual attorney fees after they were awarded judgment in a real estate fraud and breach of contract action. We hold that the trial court properly applied equitable principles to reduce the fee award and therefore affirm the order.

## FACTS AND PROCEDURAL HISTORY[1]

In December 2003, Ezri Namvar bought a Beverly Hills apartment building owned by the Teitler Family Trust (the Trust). Namvar was a principal of EnPalm, LLC, and he soon after assigned his interest in the deal to EnPalm.[2] When EnPalm learned that one of the tenants, Fred Yadegar, had a long-term lease in the building, it sued Yadegar, the Trust, and Tracy P. Teitler, presumably for breach of contract and misrepresentation concerning the existence of any tenants with such leases.[3] At the May 2006 bench trial, Yadegar tried to introduce a written 10-year lease supposedly signed by

---

[1] Appellants failed to include in the record the pleadings, the trial exhibits, any of the reported trial proceedings, or respondents' written opposition to appellants' attorney fee motion. Instead, we are limited to the statement of decision, appellants' fee motion, the transcript of the hearing on that motion, and the court's written order setting the amount of attorney fees. Although the statement of facts suffers from some incurable factual gaps as a result of appellants' failure to include those items in the record, we were able to glean the essential facts and were therefore able to conduct a meaningful appellate review. (See *Santa Clara County Environmental Health Assn. v. County of Santa Clara* (1985) 173 Cal.App.3d 74, 83–84 [218 Cal.Rptr. 678].)

[2] Namvar was also a principal in Maram Holdings, LLC, which was a plaintiff below and is a respondent on appeal. Teitler Investments was also named as a defendant and is a party to this appeal. Neither the record nor the parties' appellate briefs shed any light on the roles those two entities played in the relevant transaction.

[3] We say presumably because the pleadings are not in the appellate record and the parties have not described the causes of action in their appellate briefs. It appears that various related cross actions were also filed, but they were dismissed before judgment was entered. We will sometimes refer to the Trust, Teitler, and Teitler Investments collectively as appellants, and to EnPalm and Maram Holdings collectively as respondents.

Teitler. The court excluded that document because there was no proof that it or Teitler's signature were authentic and because there was a genuine dispute about the terms of that purported agreement. According to the trial court's statement of decision, because all of EnPalm's causes of action were based solely on the existence of that purported lease extension, the exclusion of the document inevitably led to the entry of judgment for appellants.

Appellants then brought a motion asking the court to award them more than $116,000 for contractual attorney fees. (Civ. Code, § 1717.) The motion did not include a calculation based on their lawyers' time and hourly rates (the lodestar) and did not include attorney timesheets. Even so, the trial court applied both its familiarity with the case and the lodestar principles to calculate a reasonable attorney fee of $50,000. Stating that its calculation did "not end there," the court went on to apply equitable principles to reduce appellants' fees by 90 percent to $5,000 because Teitler intentionally lied under oath about various material matters. According to the court's minute order, "this action may well have resolved in its early stages, formally or informally, had Tracy Teitler been more forthcoming as to the true facts, i.e, the vast majority of the time incurred by the Teitler Defendants' counsel was not reasonably incurred."

As far as we can tell from the transcript of that hearing, even though serious authenticity questions led the court to exclude Yadegar's purported 10-year lease addendum, there was evidence that Teitler concealed the existence of two- and three-year addendums to his lease. The court said that Teitler's testimony was "just woven with unbelievable statements, half truths, misrepresentations and flat-out lies from the beginning of the transaction all the way through. [¶] Miss Teitler created this monster, I believe, and of anyone I think [she] really is the culpable party because she had within her power before the sale, during the escrow, right after the sale, the power and the ability and the obligation to disclose what was going on with this property, and her selective recollection and flat-out recollection [*sic*] and flat-out false statements I think are really what created this whole situation." The court concluded by stating that absent Teitler's actions, she "could have avoided the bulk of what transpired in this litigation; I think that's what the evidence shows." On appeal, appellants do not challenge the trial court's lodestar figure of $50,000, but contend the court erred by reducing that amount by 90 percent as "punishment" for Teitler's conduct.

## DISCUSSION

■ Except as provided for by statute, compensation for attorney fees is left to the agreement of the parties. (Code Civ. Proc., § 1021.) Civil Code section 1717 (section 1717) provides that reasonable attorney fees authorized by contract shall be awarded to the prevailing party as "fixed by the court." The trial court has broad discretion to determine the amount of a reasonable fee, and the award of such fees is governed by equitable principles. (*PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1094–1095 [95 Cal.Rptr.2d 198, 997 P.2d 511] (*PLCM*).) The first step involves the lodestar figure—a calculation based on the number of hours reasonably expended multiplied by the lawyer's hourly rate. "The lodestar figure may then be adjusted, based on consideration of factors specific to the case, in order to fix the fee at the fair market value for the legal services provided." (*Id.* at p. 1095.) In short, after determining the lodestar amount, the court shall then " 'consider whether the total award so calculated under all of the circumstances of the case is more than a reasonable amount and, if so, shall reduce the section 1717 award so that it is a reasonable figure.' " (*Id.* at pp. 1095–1096, quoting *Sternwest Corp. v. Ash* (1986) 183 Cal.App.3d 74, 77 [227 Cal.Rptr. 804].) The factors to be considered include the nature and difficulty of the litigation, the amount of money involved, the skill required and employed to handle the case, the attention given, the success or failure, *and other circumstances in the case.* (*PLCM*, at p. 1096.) The "necessity for and the nature of the litigation" are also factors to consider. (*Kanner v. Globe Bottling Co.* (1969) 273 Cal.App.2d 559, 569 [78 Cal.Rptr. 25] [appellate court affirmed award of fees reduced by trial court].) We will reverse a fee award only if there has been a manifest abuse of discretion. (*PLCM, supra*, at p. 1095.)

With these rules in mind, it appears that the trial court acted within its discretion by reducing appellants' fee award. After determining the lodestar figure of $50,000, the trial court was entitled to consider whether that sum should be reduced to a reasonable figure under the applicable equitable principles.[4] (*PLCM, supra*, 22 Cal.4th at pp. 1095–1096.) It did just that,

---

[4] The trial court's statement that it had fixed a "reasonable" lodestar sum of $50,000 appears to have caused a mistaken belief that the trial court was somehow barred from going on to reduce that amount under equitable principles. First, as *PLCM* noted, the court can determine a reasonable lodestar fee (based on the apparent reasonable amount of hours and a reasonable hourly rate) and then proceed to adjust it downward by way of equitable principles. (*PLCM, supra*, 22 Cal.4th at pp. 1095–1096.) Second, because the trial court ultimately determined that Teitler's conduct meant that most of the time incurred by appellants' counsel was not reasonable, it appears to us that this so-called equitable calculation in fact occurred as part of the *first step* described in *PLCM*, where the trial court determines the lodestar fee by determining the reasonable, not actual, number of hours expended by counsel for the prevailing party.

finding that (1) Teitler engaged in conduct that made much of the litigation unnecessary and; (2) as a result, most of the lodestar figure represented attorney fees that were unreasonable.

Appellants do not dispute these principles. In fact, they do not address them at all. Instead, they contend the trial court erred by reducing their attorney fees as punishment for Teitler's litigation misconduct. Because this contention is unsupported both factually and legally, we disagree.

On the factual end of this equation, while appellants contend in their statement of facts that the trial court's ruling was not supported by the evidence, they do not support that claim by way of argument, discussion, analysis, or citation to the record. In fact, as noted earlier, the record does not include any of the trial proceedings, leaving us no way to evaluate the merits of such a contention had it ever been made. This leads us to deem that issue waived, a determination that has profound consequences for appellants. Although they contend the trial court "punished" them, the trial court never used that term, and the state of the record, combined with the lack of argument on the issue, compels us to assume that Teitler engaged in conduct before and during the trial that rendered most of appellants' claimed attorney fees unnecessary. (*Amato v. Mercury Casualty Co.* (1993) 18 Cal.App.4th 1784, 1794–1795 [23 Cal.Rptr.2d 73].) Therefore, as we see it, the issue is not whether a trial court may "punish" a party's litigation conduct by reducing its attorney fees. Instead, as framed by the undisputed findings and the applicable standard of review, the issue is whether a trial court has discretion to reduce a prevailing party's contractual attorney fees to the extent they were unnecessary.[5] We hold that it may.

---

[5] We therefore agree with the dissent's rejection of a rule that would allow a trial court to reduce a prevailing party's contractual attorney fees for purely subjective reasons, such as its views on the merits of a case, or antipathy toward a party, her counsel, or counsel's litigation strategy. Nor do we intend that fees may be reduced solely to punish a party for such reasons. As just discussed, our holding is based solely on the undisputed finding that, given how the case unfolded at trial, the bulk of appellants' fees was unnecessary. The dissent itself implicitly recognizes the propriety of this factor when it cites statutory attorney fee decisions such as *Harman v. City and County of San Francisco* (2007) 158 Cal.App.4th 407, 417 [69 Cal.Rptr.3d 750], and *Graciano v. Robinson Ford Sales, Inc.* (2006) 144 Cal.App.4th 140, 161 [50 Cal.Rptr.3d 273], for the proposition that a trial court may strike fees that were not reasonably expended, or were duplicative or excessive.

We disagree, however, with the dissent's contention that because equitable considerations such as a party's litigation conduct may not be used when determining who prevailed at trial (*Hsu v. Abbara* (1995) 9 Cal.4th 863, 877 [39 Cal.Rptr.2d 824, 891 P.2d 804]), the same holds true when determining how much of a prevailing party's claimed attorney fees were in fact reasonable. The rule makes sense in the context of the initial prevailing party determination, because using such factors to deny that status to a winning party amounts to a true interference with contract by denying her the ability to recover fees at all. On the other hand, it seems not

Their legal argument is equally flawed. It rests on language in *Graham v. DaimlerChrysler Corp.* (2004) 34 Cal.4th 553, 583 [21 Cal.Rptr.3d 331, 101 P.3d 140] (*Graham*), where fees were awarded under the private attorney general statute (Code Civ. Proc., § 1021.5), and which considered the propriety of using a multiplier to enhance the award for fees incurred in separately litigating the fee issue itself, as opposed to the merits of the underlying litigation.[6] As part of its discussion, the *Graham* court said that "attorney fees may not be used to punish defendants . . . ." (*Graham*, at p. 582.) Relying solely on this statement, appellants contend that the trial court did just that when it reduced their attorney fee award.

First, it is arguable that *Graham* is not even applicable because it arose in a far different factual setting under an entirely separate fee statute. Second, even if *Graham*'s principles apply to contractual fee awards, appellants have both misread and misapplied that decision. Instead, as set forth below, we conclude that the principles to be derived from *Graham* are in fact consistent with the trial court's proper application of equitable principles in this case.[7]

Appellants' conclusion is based on a cribbed interpretation of the facts, a selective reading of *Graham*, and a parallel failure to consider the decisions the *Graham* court relied on. As support for the proposition that attorney fees may not be used to punish defendants, *Graham* cited *Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1141 [104 Cal.Rptr.2d 377, 17 P.3d 735] (*Ketchum*). (*Graham*, *supra*, 34 Cal.4th at p. 582.) At issue in *Ketchum* was the propriety of increasing the lodestar amount of a prevailing defendant's attorney fees incurred at trial for litigating the fee award itself after successfully obtaining dismissal of the complaint as a SLAPP (strategic lawsuit against public participation) action under Code of Civil Procedure section 425.16. The *Ketchum* court reversed a fee award that used a multiplier to enhance the amount of the award for fees incurred in litigating the fee issue itself, then remanded for a recalculation of the fees. Near the end of its discussion, and apparently as guidance for the trial court, the Supreme Court addressed the plaintiff's contention that he believed the trial court enhanced the defendant's fee award because it disapproved of the plaintiff's litigation strategy, including statements that he intended to tie up the defendant in court. In a nod to

just equitable, but in line with the reasonable expectations of contracting parties, to deny attorney fees that were not reasonably necessary.

[6] Code of Civil Procedure section 1021.5 gives a trial court discretion to award attorney fees to the successful party in an action that resulted in enforcement of an important right affecting the public interest, so long as a significant public benefit was realized, the burden of private enforcement makes the award appropriate, and the interests of justice show that the fees should not be paid from any recovery.

[7] Of course, if *Graham* and the other decisions it cites do not apply because they are not interpreting section 1717, then presumably in a contractual attorney fees case we should also disregard *Graham*'s statement about not using fee awards to punish a party.

that concern, the Supreme Court said that a fee enhancement may not be imposed "merely for the purpose of punishing [plaintiff]." (*Ketchum, supra,* at p. 1142.) We believe this statement leaves open the option of enhancing (or as in this case, reducing) a fee award if there is some other proper basis aside from "mere" punishment, a notion confirmed by both the *Graham* court and the cases it relied on.

The full quote from *Graham* came in the context of when and whether to enhance a fee award based on litigating the private attorney general fee issue, as opposed to the merits of the underlying action. After stating that an enhancement based on the results obtained was seldom justified in the litigation over the amount of fees, the court noted that fee litigation is usually far simpler than litigation on the merits. The court then said: "On the other hand, while attorney fees may not be used to punish defendants (*Ketchum, supra,* 24 Cal.4th at p. 1141), fees for fee litigation may be enhanced when a defendant's opposition to the fee motion creates extraordinary difficulties." (*Graham, supra,* 34 Cal.4th at pp. 582–583.) As authority for the latter proposition, the *Graham* court cited *Edgerton v. State Personnel Bd.* (2000) 83 Cal.App.4th 1350, 1363 [100 Cal.Rptr.2d 491] (*Edgerton*) and *Crommie v. State of Cal., Public Utilities Com'n* (N.D.Cal. 1994) 840 F.Supp. 719, 726 (*Crommie*). (*Graham, supra,* 34 Cal.4th at pp. 582–583.) In *Edgerton,* the trial court applied a multiplier to enhance the prevailing plaintiffs' lodestar fee determination under Code of Civil Procedure section 1021.5 because the defendant passed on a chance to settle the litigation early on in exchange for nothing more than an agreement to change the drug testing policy that led to the litigation, conduct the trial court characterized as "intransigent opposition." The appellate court affirmed that reasoning. (*Edgerton, supra,* at p. 1363.) The *Crommie* court considered a fee award to successful plaintiffs under both federal and California age discrimination statutes, and enhanced their attorney fee award because their counsel obtained an exceptional result in the face of "defense counsel's excessively vexatious and often unreasonable opposition" during trial. (*Crommie, supra,* at p. 726.)

█ Taken as a whole, *Graham* therefore stands for far more than appellants suggest. After reading the full quote and its underlying authority, it is best read as a prohibition against enhancing fee awards solely to punish a party, while permitting fee enhancements in the context of fee litigation itself if a party has engaged in litigation conduct that has caused the prevailing party to spend more time on a case than was otherwise reasonably necessary. Does this rule apply as a ground for *reducing* a prevailing party's fee award, as happened here? The *Edgerton* court said it does: "Once the lodestar amount is determined, the court may consider a variety of other factors justifying augmentation *or reduction* of the award." (*Edgerton, supra,* 83

Cal.App.4th at p. 1363, italics added.) Although *Edgerton, Graham,* and *Ketchum* all involved statutory fee awards, their conclusions are consistent with the use of equitable principles to adjust a prevailing party's lodestar fees under section 1717. (*PLCM, supra,* 22 Cal.4th at pp. 1094–1096, quoting *International Industries, Inc. v. Olen* (1978) 21 Cal.3d 218, 224 [145 Cal.Rptr. 691, 577 P.2d 1031] [under section 1717, once the lodestar is calculated, that figure may be reduced by reliance on " 'equitable considerations . . . [which must] prevail over . . . the technical rules of contractual construction' "]; accord, *Kanner v. Globe Bottling Co., supra,* 273 Cal.App.2d at p. 569 [citing necessity of litigation as a factor in a case where prevailing plaintiff's contractual attorney fees were reduced].) We therefore see no good reason not to apply their holdings here. ▆ In short, the trial court's use of equitable considerations to reduce the lodestar amount of appellants' attorney fees because most of those fees were unnecessary was proper under both *PLCM* and *Graham.*[8]

## DISPOSITION

For the reasons set forth above, the attorney fee award is affirmed. Respondents shall recover their appellate costs.

Egerton, J.,[*] concurred.

**COOPER, P. J.,** Dissenting.—I respectfully dissent from the result reached by the majority in this case. I agree with the recitation of the general principles that govern the determination of the appropriate amount of attorney fees to be awarded pursuant to Civil Code section 1717.[1] I agree that "[t]he trial court has broad discretion to determine the amount of a reasonable fee, and the award of such fees is governed by equitable principles. (*PLCM Group,*

---

[8] We disagree with the dissent's contention that *PLCM*'s discussion about the procedure and factors used to determine contractual attorney fees should not be given much weight because it was no more than a general recitation of the applicable principles in an unrelated factual and legal context. We are aware of no decisions that cast doubt on the principles announced in *PLCM.* Because the Supreme Court in *PLCM* relied on those principles to resolve the question whether a contractual attorney fee award was reasonable (*PLCM, supra,* 22 Cal.4th at pp. 1094–1096), that decision is binding on us and we may not ignore its teachings. (*California Coastal Com. v. Office of Admin. Law* (1989) 210 Cal.App.3d 758, 762–763 [258 Cal.Rptr. 560].) Even if those statements are considered dicta, we will not reject them without a compelling reason. (*Id.* at p. 763.)

[*] Judge of the Superior Court of Los Angeles County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

[1] All further undesignated statutory references are to the Civil Code.

*Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1094–1095 [95 Cal.Rptr.2d 198, 997 P.2d 511] (*PLCM*).)" (Maj. opn., *ante*, at p. 774.) I further agree that the use of the "lodestar" method of calculating the fee is the approved method for the determination of fees. However, I disagree with the majority that the trial judge in this case properly applied these principles in determining the reasonable amount of attorney fees to be awarded in this case.

My analysis necessarily begins with the reasons the trial judge gave to explain why he first reduced the fees from $100,000 to $50,000 and then from $50,000 to $5,000. The appellants initially submitted a motion for award of over $100,000 in attorney fees. In accordance with the standard procedure, the trial judge first determined that the defendants/appellants were the prevailing parties for purposes of the contractual attorney fees award. The trial judge then stated that he considered the motion and determined the lodestar amount for attorney fees to be $50,000, based upon his familiarity with the case and with lodestar principles. Nevertheless, the trial judge went further and reduced the fees to $5,000. Because the reasons given by the trial judge are the cause of this appeal and the present discussion between the majority and this dissent, I set them out here in their entirety. This was the explanation provided by the trial court for his reduction of the fees:

"The Court: Well, the problem with Miss Teitler has been that her testimony was just woven with unbelievable statements, half truths, misrepresenations and flat-out lies from the beginning of the transaction all the way through.

"Miss Teitler created this monster, I believe and of anyone I think Miss Teitler really is the culpable party because she had within her power before the sale, during the escrow, right after the sale, the power and ability and the obligation to disclose what was going on with this property, and her selective recollection and flat-out recollection and flat out false statements I think are really what created this whole situation.

"Whether it was well, she wasn't really untruth about that, she was untruthful about other things. Anyone would have been on any reasonable type of notice that had been Miss Teitler's obligation could have avoided the bulk of what transpired in this litigation; I think that's what the evidence shows."

Given this explanation for the fee reduction, the second reduction of fees from $50,000 to $5,000 was an abuse of discretion. In his own words, the second reduction in the fee was based on his assessment that Tracy P. Teitler, although she was the prevailing party, was also "the culpable party."

Section 1717 does not afford a trial judge the discretion to take the action described above. To begin with, the award of contractual fees is based on an agreement between private parties that in the event of dispute the party prevailing shall receive an award of this or her reasonable attorney fees. The involvement of the court in this private arrangement occurred when the courts felt there was a need to even out the bargaining position between unequal parties. Because the trial judges were regarded as best suited to evaluate the legal services rendered and in order to assure uniformity in the application of the rules, the courts were assigned the responsibility to make the determination of the reasonable amount of fees.

This responsibility does not include giving the trial judge the authority to decide in a section 1717 contractual fee award case that, regardless of the quality of the legal services provided or the appropriateness of the hourly charges requested, the fee award can be reduced below an amount equal to the fair market value of the services rendered, especially when based on the fact that the judge believes the prevailing party's behavior caused the litigation or that the prevailing party "could have avoided" the litigation or some other subjective assessment about the merits of the litigation. The judge here believed that Teitler lied under oath and lied about the underlying transaction and for that reason should not receive the lodestar amount of attorney fees as the prevailing party. Although trial judges have considerable discretion, it does not extend as far as the majority sanctions. There are other circumstances, such as fees awarded in "private attorney general" litigation where such subjective determinations are appropriate. This is not such a case.

The majority says appellants do not dispute the general principles regarding the determination of contractual attorney fees. This is most likely the case because the appellants, as well as the author of this dissent, agree with the statement of general principles. The majority states that the appellants' contention is that the trial court erred by reducing their attorney fees as punishment for Teitler's litigation misconduct. The majority then suggests that this contention is unsupported "factually and legally." (Maj. opn., *ante*, at p. 775.) The entire factual record needed for appellants' contention is contained in the remarks of the trial judge. This is the only record of the reasons for the second reduction. The point made in this dissent is not that the trial judge's conclusions about the behavior of the Teitler was inaccurate. A careful review of the entire record of the proceedings may well reveal that the judge's impression of Teitler's credibility and other matters was accurate. The point of this dissent is that, even if the judge's impressions were accurate, the judge still does not have the authority to reduce the fee for the reasons given in this case. I will not quibble further with the majority about the facts; the record speaks for itself. The majority frames the issue as involving an evaluation of whether attorney fees were "unnecessary." This is too simplistic a formulation of the issue as the balance of this dissent will address.

*Award of Fees Under Civil Code Section 1717*

The explanation of my disagreement begins with a careful look at the scope of the discretion afforded to the trial judge in making the attorney fee decision. In California, "parties may validly agree that the prevailing party will be awarded attorney fees incurred in any litigation between themselves, whether such litigation sounds in tort or in contract. [Citations.]" (*Xuereb v. Marcus & Millichap, Inc.* (1992) 3 Cal.App.4th 1338, 1341 [5 Cal.Rptr.2d 154].) The authority to award such fees was incorporated into section 1717 which provides: "(a) In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, *shall be entitled to reasonable attorney's fees* in addition to other costs. [¶]. . . [¶] Reasonable attorney's fees shall be fixed by the court, and shall be an element of the costs of suit." (Italics added.) The Supreme Court summarized the historical purpose of section 1717 as follows: " 'Enactment of section 1717 commands that equitable considerations must rise over formal ones. *Building a reciprocal right to attorney fees into contracts, and prohibiting its waiver, the section reflects legislative intent that equitable considerations must prevail over both the bargaining power of the parties and the technical rules of contractual construction.*' ([*International Industries, Inc. v.*] *Olen* [(1978)] 21 Cal.3d [218,] 224 [145 Cal.Rptr. 691, 577 P.2d 1031].)" (*Sears v. Baccaglio* (1998) 60 Cal.App.4th 1136, 1153 [70 Cal.Rptr.2d 769], italics added; see also *Bank of Idaho v. Pine Avenue Associates* (1982) 137 Cal.App.3d 5, 17 [186 Cal.Rptr. 695].) This same generic language regarding equitable considerations was often repeated over the following decades as part of a statement of general principles about attorney fees.

*Application of Section 1717—Determining the Fee Amount*

The first step in the section 1717 analysis is the determination of the prevailing party.[2] Although there is no dispute in this case regarding the prevailing party determination, a short discussion of the "prevailing party" analysis is relevant to this appeal because much of the discussion of the "equitable principles" applied in the section 1717 arena is located in "prevailing party" cases and not in the cases concerning the calculation of the attorney fees.

---

[2] The initial identification of a prevailing party is critical because although a trial court has considerable discretion in fixing the amount of attorney fees awarded to a prevailing party in an action on a contract, a court may not completely deny fees where a contract calls for their payment. (*Texas Commerce Bank v. Garamendi* (1994) 28 Cal.App.4th 1234 [34 Cal.Rptr.2d 155]; *Palmer v. Shawback* (1993) 17 Cal.App.4th 296 [21 Cal.Rptr.2d 575]; see also *Estate of Drummond* (2007) 149 Cal.App.4th 46 [56 Cal.Rptr.3d 691].)

The majority does not disagree with the trial court's determination that appellants were the prevailing parties in this litigation and it therefore suggests that cases discussing the prevailing party determination are irrelevant to this discussion. In fact these cases are highly relevant. For example, in *Hsu v. Abbara* (1995) 9 Cal.4th 863 [39 Cal.Rptr.2d 824, 891 P.2d 804] (*Hsu*), after citing the familiar general principles about attorney fees, the California Supreme Court stated the following: "The Hsus cite language in this court's decision in *International Industries, Inc. v. Olen, supra,* 21 Cal.3d 218, 224, stating that 'contractual provisions for attorney fees will not be inflexibly enforced' and that 'the form of the judgment is not necessarily controlling, but must give way to equitable considerations.' We agree that *in determining litigation success,* courts should respect substance rather than form, and to this extent should be guided by 'equitable considerations.' For example, a party who is denied direct relief on a claim may nonetheless be found to be a prevailing party if it is clear that the party has otherwise achieved its main litigation objective. (See, e.g., *Lewis v. Alpha Beta Co.* (1983) 141 Cal.App.3d 29 [189 Cal.Rptr. 840]; see also *National Computer Rental, Ltd. v. Bergen Brunswig Corp.* (1976) 59 Cal.App.3d 58, 63 [130 Cal.Rptr. 360] [defendant awarded fees under section 1717 because it prevailed on the only disputed claim, even though plaintiff obtained judgment on undisputed claims].) But when one party obtains a 'simple, unqualified win' on the single contract claim presented by the action, the trial court may not invoke equitable considerations unrelated to litigation success, *such as the parties' behavior during settlement negotiations or discovery proceedings,* except as expressly authorized by statute. (See, e.g., *Deane Gardenhome Assn. v. Denktas* [(1993)] 13 Cal.App.4th 1394, 1398–1399 [16 Cal.Rptr.2d 816] [trial court improperly relied on party's obstreperous behavior and uncompromising litigation stance to find there was no prevailing party]; *Bruckman v. Parliament Escrow Corp.* (1987) 190 Cal.App.3d 1051, 1059 [235 Cal.Rptr. 813] [stating that party's failure to offer to compromise did not affect that party's right to attorney fees under section 1717].) *To admit such factors into the 'prevailing party' equation would convert the attorney fees motion from a relatively uncomplicated evaluation of the parties' comparative litigation success into a formless, limitless attack on the ethics and character of every party who seeks attorney fees under section 1717.* We find no evidence that the Legislature intended that the prevailing party determination be made in this way." (*Hsu, supra,* 9 Cal.4th at p. 877, italics added.)

Even though the law is clear that an "attack on the ethics and character of every party who seeks attorney fees under section 1717" is somehow inappropriate in determining the prevailing party (a particularly equitable determination), the majority takes the position that this factor is nevertheless appropriate in the decision to reduce a lodestar amount. I believe the logic is inescapable that, if you cannot use this type of

consideration to determine there was no prevailing party, you cannot use the same factor in the determination of the amount of fees to award. Additionally, California cases state directly that when one party obtains a simple, unqualified win on a single contract claim, in awarding fees and costs the *trial court may not invoke equitable considerations unrelated to litigation success*, such as parties' behavior during settlement negotiations or discovery proceedings, except as expressly authorized by statute. (*RTC Mortgage Trust v. Shlens* (1998) 62 Cal.App.4th 304 [72 Cal.Rptr.2d 581].)

*Determination of Reasonable Fee (Lodestar Method)*

The "lodestar" or "touchstone" method is the approved method to decide the actual amount of attorney fees to be awarded under section 1717. The lodestar method for calculating an award of attorney fees requires the trial court to first determine a touchstone or lodestar figure based on a careful compilation of the time spent and reasonable hourly compensation for each attorney. The trial court may then augment or diminish the touchstone figure by taking various relevant factors into account. (*Press v. Lucky Stores, Inc.* (1983) 34 Cal.3d 311, 322 [193 Cal.Rptr. 900, 667 P.2d 704].) Of absolute importance to this discussion is the fact that the purpose or goal of the adjustment is *"to fix the fee at the fair market value for the legal services provided"* based on "an *objective determination of the value of the attorney's services* . . . ." (*PLCM Group, Inc. v. Drexler, supra*, 22 Cal.4th at p. 1095 (*PLCM*), italics added; see also *Thayer v. Wells Fargo Bank* (2001) 92 Cal.App.4th 819 [112 Cal.Rptr.2d 284]; *Trope v. Katz* (1995) 11 Cal.4th 274, 289 [45 Cal.Rptr.2d 241, 902 P.2d 259].)

"A frequently alluded to and illustrative summary of the multitude of factors which the trial court may and should consider in making its award is found in *Berry* v. *Chaplin* [(1946)] 74 Cal.App.2d 669, 678–679 [169 P.2d 453]: 'The compensation of an attorney does not lie in the economic law of supply and demand like the fluctuating price of wheat and potatoes. Among the factors to be considered in determining what constitutes a reasonable compensation for an attorney who has rendered services in connection with a legal proceeding are the nature of the litigation, its difficulty, the amount involved, the skill required and the skill employed in handling the litigation, the attention given, the success of the attorney's efforts, his learning, his age, and his experience in the particular type of work demanded [citation]; the intricacies and importance of the litigation, the labor and necessity for skilled legal training and ability in trying the cause, and the time consumed. [Citations.]' " (*Shannon v. Northern Counties Title Ins. Co.* (1969) 270 Cal.App.2d 686, 689 [76 Cal.Rptr. 7]; see also *Boller v. Signal Oil & Gas Co.*

(1964) 230 Cal.App.2d 648, 652–653 [41 Cal.Rptr. 206]; *Hurst v. Hurst* (1964) 227 Cal.App.2d 859, 871 [39 Cal.Rptr. 162].) This list is not exhaustive and other appropriate factors may be considered.

*Increasing the Lodestar—Use of a Multiplier*

The factors above or any other relevant factors may be used to determine whether the skill and expertise of counsel justify a multiplier in calculating an attorney fee award. The question to be answered is whether the litigation required extraordinary legal skill or whether there are other factors justifying augmentation of the unadorned lodestar in order to approximate the fair market rate for such services. (*Robbins v. Alibrandi* (2005) 127 Cal.App.4th 438 [25 Cal.Rptr.3d 387].)

*Decreasing the Lodestar Amount—Use of a Negative Multiplier*

In addition to the familiar recital of factors, cases identify numerous additional valid reasons to reduce the lodestar amount:[3]

—The initial lodestar calculation should exclude " ' "hours that were not 'reasonably expended' " ' in pursuit of successful claims." (*Harman v. City and County of San Francisco* (2007) 158 Cal.App.4th 407, 417 [69 Cal.Rptr.3d 750], quoting *Hensley v. Eckerhart* (1983) 461 U.S. 424, 434 [76 L.Ed.2d 40, 103 S.Ct. 1933].)

—Time spent on services which produce no tangible benefit for the client is not time reasonably spent. (*Meister v. Regents of University of California* (1998) 67 Cal.App.4th 437 [78 Cal.Rptr.2d 913].)

—If a fee request appears unreasonably inflated, the trial court may reduce the award or deny it altogether. (*Meister v. Regents of University of California, supra,* 67 Cal.App.4th at p. 448.)

—Hours expended on litigation after the plaintiffs had rejected an informal settlement offer that was more than the amount ultimately recovered can be considered unreasonable. (*Meister v. Regents of University of California,*

---

[3] I located additional federal cases identifying factors courts use to reduce a fee award to adjust, for example, for duplicative work, for lack of success on certain issues, or the like. (See, e.g., *Bd. of Educ. of Frederick County v. I.S.* (D.Md. 2005) 358 F.Supp.2d 462, 466, 470 [fee request reduced in part for unsuccessful claim and duplicative work]; *Betancourt v. Giuliani* (S.D.N.Y. 2004) 325 F.Supp.2d 330, 333–335 [hourly rate reduced to prevailing rate and award further reduced to reflect limited success]; *Alexander S. By and Through Bowers v. Boyd* (D.S.C. 1995) 929 F.Supp. 925, 943.)

*supra*, 67 Cal.App.4th at p. 449 ["plaintiff's attorneys achieved nothing by continuing to expend their time after [having rejected such] offer. The trial court's decision [to not allow recovery for hours expended after the settlement offer] came within the lodestar framework because it was based on the [trial] court's assessment of whether the hours which plaintiff's attorneys claimed to have expended on this litigation were 'reasonably spent' "].)

—The court may determine the fee requested is duplicative or excessive. (*Graciano v. Robinson Ford Sales, Inc.* (2006) 144 Cal.App.4th 140 [50 Cal.Rptr.3d 273]; *Cruz v. Ayromloo* (2007)155 Cal.App.4th 1270, 1279 [66 Cal.Rptr.3d 725].)

—Although the lack of success of the attorney does not ordinarily justify a complete denial of compensation, the lack of a favorable result may very well have a significant bearing on the amount of compensation for the services which were rendered.[4] (*Hensley v. Eckerhart, supra*, 461 U.S. 424; *Mann v. Quality Old Time Service, Inc.* (2006) 139 Cal.App.4th 328, 343 [42 Cal.Rptr.3d 607].)

The majority adds an additional relevant factor: "[t]he 'necessity for and the nature of the litigation.' " (Maj. opn., *ante*, at p. 774, citing *Kanner v. Globe Bottling Co.* (1969) 273 Cal.App.2d. 559, 569 [78 Cal.Rptr. 25].)[5] This factor should not be included in the above listing because this "necessity" language is found in only three reported cases, none of which involve a decision by the trial court that the litigation was "unnecessary." There was no such determination in the *Kanner* case itself; the *Kanner* court declined to hold that attorney fees in excess of 50 percent of the judgment were so inadequate as to be unreasonable. Further, if "necessity" is meant to include the authority of the trial court to reduce an attorney fee award based on an evaluation of the merits of the litigation or the litigants, for reasons given in this dissent, I strongly disagree with that suggestion.

---

[4] In federal cases, "the favored procedure is for the district court to consider the extent of the plaintiff's success in making its initial determination of hours reasonably expended at a reasonable rate, and not in subsequent adjustments to the lodestar figure." (*Gates v. Deukmejian* (9th Cir. 1992) 987 F.2d 1392, 1404.) "Adjusting the lodestar on the basis of subsumed reasonableness factors after the lodestar has been calculated, instead of adjusting the reasonable number of hours or reasonable hourly rate at the first step, i.e. when determining the lodestar, is a disfavored procedure. [Citation.] However, as long as the district court only makes one adjustment per factor, either before or after the lodestar calculation," the error is harmless. (*Morales v. City of San Rafael* (1996) 96 F.3d 359, 364, fn. 9; see *Harman v. City and County of San Francisco, supra*, 158 Cal.App.4th at p. 417.)

[5] This language is found in only three reported cases. *Kanner v. Globe Bottling Co, supra*, 273 Cal.App.2d 559 (finding attorney fees in excess of 50 percent of judgment are not so inadequate as to be unreasonable); *Estate of McDonald* (1940) 37 Cal.App.2d 521 [99 P.2d 1115] (regarding award of extraordinary attorney fees in probate); *Estate of Briggs* (1964) 230 Cal.App.2d 592 [41 Cal.Rptr. 237] (regarding extraordinary executor's commissions and extraordinary attorney fees in probate).

Contractual fee cases which purport to reduce or increase the amount of fees based on trial tactics often involve the situation where the prevailing party has incurred additional fees due to the trial tactics of the losing party. In those cases, even though there is no true litigation "necessity" for that legal work or any "benefit" to the client, the courts uniformly award the additional legal fees to the prevailing party. The rationale for those decisions is that a party cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the opposition in response. (*Serrano v. Unruh* (1982) 32 Cal.3d 621, 627 [186 Cal.Rptr. 754, 652 P.2d 985] (*Serrano IV*); see also *Copeland v. Marshall* (D.C. Cir. 1980) 641 F.2d 880, 904; *Wolf v. Frank* (5th Cir. 1977) 555 F.2d 1213, 1217; *Perkins v. New Orleans Athletic Club* (E.D.La. 1976) 429 F.Supp. 661, 667.)

This case does not fit that scenario. There is nothing in the record to indicate any of the legal work undertaken by appellants' counsel was "unnecessary." The only suggestion that the legal work was "unnecessary" comes from the trial judge's opinion that the case could have ended sooner had Teitler, not "lied" or been more forthcoming, etc. The majority position, if correct, would allow a trial judge to reduce fees to a nominal amount in any case where he felt that the prevailing party behaved badly or could have avoided the litigation entirely. If it existed, this authority would be quite a boon to judges and could drastically reduce future litigation in California because the scenario (one side is lying and could avoid the litigation) is likely to be true in a significant percentage of litigation filed in the California courts.

Although case law does not discuss this issue, there is a strong policy reason why the trial court should not be able to reduce contractual attorney fees because of a dislike of a parties, their tactics, the strength of their case or other such subjective factors. In litigation between private parties who have agreed to an attorney fees provision, it seems inappropriate to allow a judge to intrude into the private commercial agreement between the parties and insert subjective assessments into the fee calculation. Parties entering into contractual fee arrangements are willing to let the trial court determine the prevailing party and are interested in the services of the trial court only to act as an expert in the quality of the legal services provided in the lawsuit and to provide an unbiased and neutral evaluation of the fair market value of the attorney fees.

*Lodestar Adjustment in Private Attorney General Cases*

Originally adopted by the California Supreme Court in *Serrano v. Priest* (1977) 20 Cal.3d 25, 48–49 [141 Cal.Rptr. 315, 569 P.2d 1303] (*Serrano III*),

" 'the private attorney general doctrine "rests upon the recognition that privately initiated lawsuits are often essential to the effectuation of the fundamental public policies embodied in constitutional or statutory provisions, and that, without some mechanism authorizing the award of attorney fees, private actions to enforce such important public policies will as a practical matter frequently be infeasible." Thus, the fundamental objective of the doctrine is to encourage suits enforcing important public policies by providing substantial attorney fees to successful litigants in such cases.' [Citation.]" (*Graham v. DaimlerChrysler Corp.* (2004) 34 Cal.4th 553, 565 [21 Cal.Rptr.3d 331, 101 P.3d 140] (*Graham*).) Code of Civil Procedure section 1021.5 provides in part: "Upon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement . . . are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any."

"The significant benefit criterion calls for an examination whether the litigation has had a beneficial impact on the public as a whole or on a group of private parties which is sufficiently large to justify a fee award. This criterion thereby implements the general requirement that the benefit provided by the litigation inures primarily to the public." (*Beasley v. Wells Fargo Bank* (1991) 235 Cal.App.3d 1407, 1417 [1 Cal.Rptr.2d 459].)

In *Serrano III*, the Supreme Court held the lodestar method was fundamental to arriving at an objectively reasonable amount of attorney fees awarded under a private attorney general theory. "At almost the same time *Serrano III* was decided, the Legislature enacted [Code of Civil Procedure] section 1021.5,[6] providing statutory authority for court-awarded attorney fees under

---

[6] "Upon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in *any action which has resulted in the enforcement of an important right affecting the public interest* if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement, or of enforcement by one public entity against another public entity, are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any. With respect to actions involving public entities, this section applies to allowances against, but not in favor of, public entities, and no claim shall be required to be filed therefor, unless one or more successful parties and one or more opposing parties are public entities, in which case no claim shall be required to be filed therefor under Part 3 (commencing with Section 900) of Division 3.6 of Title 1 of the Government Code." (Code Civ. Proc., § 1021.5, italics added.) Attorney fees awarded to a public entity pursuant to this section shall not be increased or decreased by a multiplier based upon extrinsic circumstances, as discussed in *Serrano III, supra,* 20 Cal.3d at p. 25.

a private attorney general theory." (*Flannery v. California Highway Patrol* (1998) 61 Cal.App.4th 629, 640 [71 Cal.Rptr.2d 632].) As enacted, Code of Civil Procedure section 1021.5 did not expressly adopt the lodestar adjustment method. (Code Civ. Proc., former § 1021.5, added by Stats. 1977, ch. 1197, p. 3979.) However, the Supreme Court decreed that a trial court's discretion to award fees under Code of Civil Procedure section 1021.5 must be based on the lodestar adjustment method discussed in *Serrano III*. (*Press v. Lucky Stores, Inc., supra*, 34 Cal.3d 311, 321–322.) In 1993, the Legislature amended Code of Civil Procedure section 1021.5 by adding language that expressly rejected *Serrano III* insofar as that decision allowed fees awarded to a public entity to be increased or decreased by a multiplier based on extrinsic circumstances. Both California case law and policy suggest that this type of "equitable" consideration is quite appropriate in the "private attorney general" cases. Analytically, however, there is a significant difference between the private attorney general cases and the cases which award fees on a contractual or routine statutory basis. The "private attorney general" theory in California contemplates that "if a trial court, in ruling that a motion for fees upon the [private attorney general] theory, determines that the litigation has resulted in the vindication of a strong or societally important public policy, that the necessary costs of securing this result transcend the individual plaintiff's pecuniary interest to an extent requiring subsidization, and that a substantial number of persons stand to benefit from the decision, the court may exercise its equitable powers to award attorney fees on this theory." (*Serrano III, supra*, 20 Cal.3d at p. 45.) The private attorney general doctrine rests upon the recognition that privately initiated lawsuits are often essential to the effectuation of the fundamental public policies embodied in constitutional or statutory provisions and that, without some mechanism authorizing the award of attorney fees, private actions to enforce such important public policies will as a practical matter frequently be infeasible. (Annot., Private Attorney General Doctrine—State Cases (2003) 106 A.L.R.5th 523, citing Code Civ. Proc., § 1021.5.)

Factors to be considered in determining attorney fees in a private attorney general case differ from those in the contractual fee cases. Among the factors to be considered are: "(1) the novelty and difficulty of the questions involved, and the skill displayed in presenting them; (2) the extent to which the nature of the litigation precluded other employment by the attorneys; (3) the contingent nature of the fee award, both from the point of view of eventual victory on the merits and the point of view of establishing eligibility for an award; (4) the fact that an award against the state would ultimately fall upon the taxpayers; (5) the fact that the attorneys in question received public and charitable funding for the purpose of bringing law suits

of the character here involved; (6) the fact that the monies awarded would inure not to the individual benefit of the attorneys involved but the organizations by which they are employed; and (7) the fact that in the court's view the two law firms involved had approximately an equal share in the success of the litigation." (*Serrano III, supra*, 20 Cal.3d at p. 49, fn. omitted; see *Deposit Guaranty Nat. Bank v. Roper* (1980) 445 U.S. 326 [63 L.Ed.2d 427, 100 S.Ct. 1166].)

In *Graham, supra*, 34 Cal.4th 553, the California Supreme Court held that in concept the "catalyst theory" was sound when determining fees under Code of Civil Procedure section 1021.5. Under the "catalyst theory," attorney fees may be awarded even when litigation does not result in a judicial resolution if the defendant changes its behavior substantially because of, and in the manner sought by, the litigation. (*Graham, supra*, 34 Cal.4th at p. 561.) The Supreme Court noted a concern particular to private attorney general lawsuits seeking fees under the catalyst theory. It stated: "Nor do we believe that avoiding this increased risk of public interest litigation must inevitably come at the expense of rewarding a significant number of extortionate lawsuits. We can adopt sensible limitations on the catalyst theory that discourage the latter without putting a damper on lawsuits that genuinely provide a public benefit. Our starting point in this endeavor is the observation that the Legislature has assigned responsibility for awarding fees under [Code of Civil Procedure] section 1021.5 'not to automatons unable to recognize extortionists, but to judges expected and instructed to exercise "discretion." ' [Citation.] These judges are in a good position to make the determination, as one court has expressed it, that the lawsuits have achieved their result ' "by threat of victory," not "by dint of nuisance and threat of expense." ' [Citation.] *In order to make this determination, the court is to inquire not into defendant's subjective belief about the suit but rather to gauge, objectively speaking, whether the lawsuit had merit. . . . [¶] . . . The trial court must determine that the lawsuit is not 'frivolous, unreasonable or groundless' "* (*Graham, supra*, 34 Cal.4th at p. 575, italics added, citation omitted.) The court continued, *"Attorney fees should not be awarded for a lawsuit that lacks merit*, even if its pleadings would survive a demurrer." (*Graham, supra*, 34 Cal.4th at p. 576, italics added.) The court identified a further limitation: "In addition to some scrutiny of the merits, we conclude that another limitation on the catalyst rule proposed by the Attorney General, appearing as amicus curiae, should be adopted by this court. The Attorney General proposes that *a plaintiff seeking attorney fees under a catalyst theory must first reasonably attempt to settle the matter short of litigation.* (See *Grimsley v. Board of Supervisors* (1985) 169 Cal.App.3d 960, 966–967 [213 Cal.Rptr. 108].)" (*Graham, supra*, 34 Cal.4th at p. 577, italics added.)

There are valid policy reasons for a difference between the specifics of how courts calculate fees in a private attorney general (statutory) setting versus a contractual fee setting. The authority of a trial court to take these equitable factors into account when an attorney is seeking fees under the private attorney general approach is articulated in the cases and seems eminently appropriate. There is no justification for paying attorney fees claimed under a private attorney general theory when the lawsuit has no merit, or a party unduly extends the litigation or makes no effort to reach a reasonable resolution of the dispute short of litigation. No cases can be located applying the same limitations to a party prevailing in a section 1717 contractual fee case.

The majority suggests that this "dissent itself implicitly recognizes the propriety of this [necessity] factor, when it cites statutory attorney fee decisions such as *Harman v. City and County of San Francisco*[, *supra*,] 158 Cal.App.4th 407, 417, and *Graciano v. Robinson Ford Sales, Inc.*[, *supra*,] 144 Cal.App.4th 140, 161, for the proposition that a trial court may strike fees that were not reasonably expended, or were duplicative or excessive." (Maj. opn., *ante*, at p. 775, fn. 5.) This statement suggests the majority deliberately "misunderstands" the dissent's position. To be clear, I "explicitly," not implicitly, recognize the propriety of striking fees that are not reasonably expended or are duplicative or excessive. As I have attempted to explain in this dissent, my specific dispute with the majority is precisely and solely focused on the "necessity" factor.

*Misinterpretation of Major Cases*

The majority opinion states that appellants' "conclusion is based on a cribbed interpretation of the facts, a selective reading of *Graham*, and the failure to consider the decisions the *Graham* court relied on"[7] (maj. opn., *ante*, at p. 776) and that "the trial court's use of equitable considerations to reduce the lodestar amount of appellants' attorney fees . . . was proper under both *PLCM* and *Graham*." (Maj. opn., *ante*, at p. 778.) I disagree and in this final section will respond to the majority's arguments. The majority makes a simple, but fundamental error. The equitable factors appropriately applied in private attorney general cases are not the same as those which can be considered by a trial judge setting fees in a section 1717 contractual fee case. The narrow question presented is not therefore whether the trial court may use equitable considerations to reduce the lodestar amount of contractual attorney fees, but rather whether a trial court may use the specific factors relied upon to reduce the fees in this case.

---

[7] *Graham* is a Code of Civil Procedure section 1021.5 fee case and cites as authority on the determination of the amount of fees: *Serrano III*, *Serrano IV*, *Ketchum v. Moses* (2001) 24 Cal.4th 1122 [104 Cal.Rptr.2d 377, 17 P.3d 735], and *Press v. Lucky Stores Inc.*, *supra*, 34 Cal.3d at p. 322.

California cases dealing with the award of attorney fees go back many years. One of the first significant cases is *Serrano III, supra,* 20 Cal.3d 25. In *Serrano III,* the court held that a trial court "acted within the proper limits of its inherent equitable powers when it concluded that reasonable attorney fees should be awarded to plaintiffs' attorneys on the 'private attorney general' theory." (*Id.* at p. 47.) In so ruling, the Court cited federal authority which was wholly apposite here: " 'The starting point of every fee award, once it is recognized that *the court's role in equity is to provide just compensation for the attorney,* must be a calculation of the attorney's services in terms of the time he has expended on the case. Anchoring the analysis to this concept is the only way of approaching the problem that can claim objectivity, a claim which is obviously vital to the prestige of the bar and the courts.' (*City of Detroit* v. *Grinnell Corp.* (2d Cir. 1974) 495 F.2d 448, 470; see also *Lindy Bros. Bldrs., Inc. of Phila.* v. *American R. & S. San. Corp.* (3d Cir. 1973) 487 F.2d 161, 167–169; see generally Dawson, *Lawyers and Involuntary Clients in Public Interest Litigation* [(1975)] 88 Harv.L.Rev. 849, especially pp. 925–929.)" (*Serrano III, supra,* 20 Cal.3d at p. 48, fn. 23, italics added.)

In the related case of *Serrano IV, supra,* 32 Cal.3d 621, the court concluded that "absent circumstances rendering an award unjust, *the fee should ordinarily include compensation for all hours reasonably spent,* including those relating solely to the fee." (*Id.* at p. 624, italics added; see also *Vo v. Los Virgenes Municipal Water Dist.* (2000) 79 Cal.App.4th 440 [94 Cal.Rptr.2d 143].) *Serrano IV* held in a Code of Civil Procedure section 1021.5 case, the lodestar figure can be enhanced or diminished after the court considers matters such as those enumerated in *Serrano III.* The *Serrano IV* court observed that a "fee request that appears unreasonably inflated is a special circumstance permitting the trial court to reduce the award or deny one altogether." (*Serrano IV,* at p. 635.) Also relevant to this appeal, the *Serrano IV* court noted in a footnote:[8] "A fourth principal exception [to the

---

[8] An additional footnote in *Serrano IV* contains this relevant language: "In its amicus brief in support of defendants, Los Angeles County argues that fee awards should include compensation for fee-related services only if the court finds that the losing party has in bad faith sought to dissipate the award 'through recalcitrance and automatic appeals.' (Citing *Keown* v. *Storti* (E.D.Pa. 1978) 456 F.Supp. 232, 242 & fn. 8.) [¶] Our court has not recognized a 'bad faith' exception . . . ; but even the federal courts have rejected the 'subjective' standard as too narrow to effectuate the purpose of the private-attorney-general concept. (*Newman* [v. *Piggie Park Enterprises* (1968)] 390 U.S. [400,] 401 [19 L.Ed.2d 1263, 1265, 88 S.Ct. 964].) The standard would also place courts in the unseemly position of assessing the motives of officials of a coordinate branch of government. [¶] . . . The better approach is to reflect the litigiousness of the opposition in the hours required by plaintiff to respond. As observed in *Mandell II,* 'If [the Attorney General's] tactics . . . increased the demands made on respondent's attorneys' time, the result will appear in the trial court's base-figure compilation.' ([*Mandell v. Lackner* (1979)] 92 Cal.App.3d 747, 761 [155 Cal.Rptr. 269].)" (*Serrano IV, supra,* 32 Cal.3d at p. 634, fn. 18.)

rule that counsel fees are not recoverable absent statute or enforceable agreement], for bad faith or 'vexatious and oppressive conduct' in conducting the lawsuit, is recognized by federal courts. (See, e.g., *Hutto* v. *Finney* (1978) 437 U.S. 678, 691 [57 L.Ed.2d 522, 534–535, 98 S.Ct. 2565].) This court chose not to consider the exception in *D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1, 26–27 [112 Cal.Rptr. 786, 520 P.2d 10]. (See also *Bauguess* v. *Paine* (1978) 22 Cal.3d 626 [150 Cal.Rptr. 461, 586 P.2d 942] [fees may not be awarded as sanction under court's supervisory authority].) Courts of Appeal are split on the question. (Cf. *County of Inyo* v. *City of Los Angeles* (1978) 78 Cal.App.3d 82, 91 [144 Cal.Rptr. 71] [assuming exception exists under *Williams* v. *MacDougall* (1870) 39 Cal. 80, 85–86]; *Young* v. *Redman* (1976) 55 Cal.App.3d 827, 838–839 [128 Cal.Rptr. 86] [California courts without jurisdiction, absent statute, to award fees for bad faith].)" (*Serrano IV,* at p. 627, fn. 8.)

Another leading attorney fee case is *Ketchum, supra,* 24 Cal.4th 1122, which involved the award of fees following an anti-SLAPP (strategic lawsuit against public participation) motion. The *Ketchum* court first stated that it presumed the Legislature intended the courts to use the "prevailing lodestar adjustment method" (*id.* at p. 1136) to calculate attorney fees. Ketchum, the loser on the motion, argued there were indications in the record that suggested "the superior court may improperly have permitted its disapproval of his litigation strategy to influence its selection of the enhancement amount. Indeed, the superior court repeatedly adverted to allegations that Ketchum threatened 'to keep Moses in court.' Regardless of what he may or may not have said to another tenant concerning his litigation strategy, *an enhancement for contingent risk or quality of representation may not properly be imposed merely for the purpose of punishing Ketchum.*" (*Id.* at p. 1142, italics added.)

*Ketchum* then held a multiplier for exceptional representation should only be used when "when the quality of representation far exceeds the quality of representation that would have been provided by an attorney of comparable skill and experience billing at the hourly rate used in the lodestar calculation. Otherwise, the fee award will result in unfair double counting and be unreasonable. *Nor should a fee enhancement be imposed for the purpose of punishing the losing party.*" (*Ketchum, supra,* 24 Cal.4th at p. 1139, italics added.) *Ketchum* thus advises "[t]he purpose of a fee enhancement, or so-called multiplier, for contingent risk is to bring the financial incentives for attorneys enforcing important constitutional rights, such as those protected under the anti-SLAPP [statute], into line with incentives they have to undertake claims for which they are paid on a fee-for-services basis." (*Id.* at p. 1132.)

In this case the majority concluded that the trial judge's fee reduction was appropriate under *PLCM* and *Graham*. Particularly in light of the Supreme Court authority cited above, I disagree with this conclusion. The principal holding in *PLCM, supra,* 22 Cal.4th 1084, was simply that an entity represented by in-house counsel can recover its attorney fees under section 1717. In so holding, the court reaffirmed the general principle that the trial court retains broad discretion to fix an award of attorney fees in a reasonable amount. The *PLCM* court repeated the general notion that " 'equitable considerations must prevail over both the bargaining power of the parties and the technical rules of contractual construction.' [Citation.]" (22 Cal.4th at p. 1091.)

The *PLCM* court described the fee determination process as follows: "The superior court calculated the attorney fees to be awarded PLCM *based on their market value,* specifically, the reasonable in-house attorney hours multiplied by the prevailing hourly rate in the community for comparable legal services." (*PLCM, supra,* 22 Cal.4th at p. 1094, italics added.) Citing *Serrano III,* the *PLCM* court observed next that the "lodestar figure may then be adjusted, based on consideration of factors specific to the case, *in order to fix the fee at the fair market value for the legal services provided.* [Citation.] *Such an approach anchors the trial court's analysis to an objective determination of the value of the attorney's services, ensuring that the amount awarded is not arbitrary.* [Citation.]" (*Id.* at p. 1095, italics added.) *PLCM* then listed the familiar factors for a court to consider when adjusting the lodestar, including the majority's essential " 'other circumstances in the case.' " (*Id.* at p. 1096.)[9]

The value of *PLCM*'s statement of the rules however, is limited because *PLCM* itself involved a straightforward application of the lodestar approach and there was no reduction of the lodestar amount based on factors such as those used by the trial court in this case. For that reason alone, *PLCM* does not support the majority's argument in this appeal. The majority characterizes this argument as saying that "*PLCM*'s discussion . . . should not be given

---

[9] At this point in the opinion *PLCM* cites *Melnyk v. Robledo* (1976) 64 Cal.App.3d 618 [134 Cal.Rptr. 602] as support for the "other circumstances" language. In the *Melnyk* case the appellant complained that the trial court's order regarding attorney fees was not based on evidence because the "plaintiff challenged the reasonableness of defendant's claim by way of a memorandum of points and authorities rather than by affidavit or testimony . . . ." (*Id.* at p. 624.) The trial court had to "specify each and every item in defendant's memorandum with which the court found fault." (*Id.* at p. 625.) The *Melnyk* court stated, "This would be inconsistent with the well-established rule discussed above that the trial court is entitled to take all of the circumstances into account and is not bound by the itemization claimed in the attorney's affidavit." (*Ibid.*)

much weight because it was no more than a general recitation of the applicable principles in an unrelated factual and legal context." (Maj. opn., *ante*, at p. 778, fn. 8.) This is true, but not the point. This dissent agrees with *PLCM*'s recital of the general principles. My point of departure with the majority is that *PLCM*'s general language is simply not precise enough to resolve the issue under discussion.

The majority draws the wrong conclusions from the *Graham* case as well. As discussed above, in *Graham* the California Supreme Court held that, in concept, the "catalyst theory" was sound when determining fees under Code of Civil Procedure section 1021.5. Rendering this opinion, the *Graham* court held that "fees for fee litigation" should not be enhanced because of the exceptional result in the underlying litigation or exceptional skill exhibited by an attorney, the reason being that fee litigation, for the most part, is simpler than litigation on the merits. They added that " 'while attorney fees may not be used to punish defendants (*Ketchum, supra*, 24 Cal.4th at p. 1141), fees for fee litigation may be enhanced when a defendant's opposition to the fee motion created extraordinary difficulties.' " (Maj. opn., *ante*, at p. 777.) (See, e.g., *Edgerton v. State Personnel Bd.* (2000) 83 Cal.App.4th 1350, 1363 [100 Cal.Rptr.2d 491]; *Crommie v. State of Cal., Public Utilities Com'n* (N.D.Cal. 1994) 840 F.Supp. 719.)

The majority suggests this language creates a "prohibition against enhancing fee awards solely to punish a [losing] party," while permitting a fee enhancement if the "litigation conduct [of the losing party] caused the prevailing party to spend more time on a case than was otherwise reasonably necessary." (Maj. opn., *ante*, at p. 777.) The majority next asks "[d]oes this rule apply as a ground for *reducing* a prevailing party's fee award, as happened here?" (*Id.* at p. 777.) The majority then answers its own question as follows: "The *Edgerton* court said it does: 'Once the lodestar amount is determined, the court may consider a variety of other factors justifying augmentation *or reduction* of the award.' (*Edgerton, supra*, 83 Cal.App.4th at p. 1363, italics added.)" (Maj. opn., *ante*, at pp. 777–778.)

The majority should not find such comfort in the *Edgerton* holding. First, the *Edgerton* case was a Code of Civil Procedure section 1021.5 fee award case. Second, the *Edgerton* quote itself is nothing more than a restatement of the general rule; it does not sanction the type of fee reduction which occurred in this case. More specifically, in *Edgerton v. State Personnel Bd., supra*, 83 Cal.App.4th 1350, Division Four of this court affirmed an award of attorney fees to a union that obtained, among other things, an injunction prohibiting the Department of Transportation from conducting off-duty drug testing.

Although the union brought the action only on behalf of its own members, the appellate court upheld the trial court's assessment that the award of fees was appropriate and found that the union's enforcement of the "privacy rights of employees to be free from off-duty drug testing thus necessarily conferr[ed] a significant benefit on the public as a whole." (*Id.* at pp. 1362–1363.) The court also agreed that a multiplier of 1.5 to the award of fees was proper based on the novelty and difficulty of the issues addressed by the suit. (*Id.* at p. 1363.) *Edgerton*, approving a fee increase in a private attorney general case, does not provide support for the reduction of fees in a contractual fee award setting.

The majority makes the blanket statement that, "[a]lthough *Edgerton*, *Graham*, and *Ketchum* all involved statutory fee awards, their conclusions are consistent with the use of equitable principles to adjust a prevailing party's lodestar fees under section 1717." (Maj. opn., *ante*, at p. 778.)[10] For the reasons stated previously, the precise manner in which the statutory fee award cases and the contractual fee award cases differ is with respect to the type and variety of equitable factors that can be considered. They are consistent only in their statement of the general principles which govern these cases. Under the "private attorney general" cases, the equitable factors suggested to be considered are considerably wider than in a contractual fee case. In other more limited or routine statutory fee cases, such as an anti-SLAPP motion, the analysis would ordinarily be virtually identical to a section 1717 contractual fee analysis.

## CONCLUSION

The trial court has a duty to exercise its discretion in determining a reasonable attorney fee award, and a case should be remanded for a redetermination of the award if it is evident that the court's ruling was not an exercise of discretion, but the consequence of an erroneous view of the court's own power. (*Contractors Labor Pool, Inc. v. Westway Contractors, Inc.* (1997) 53 Cal.App.4th 152 [61 Cal.Rptr.2d 715].) The trial court in this case exceeded its discretion when it reduced the contractual fees a second time. Consequently, the case should be remanded to the trial court for a redetermination

---

[10] In support of this suggestion, the majority cites *PLCM, International Industries, Inc. v. Olen*, *supra*, 21 Cal.3d at p. 224, and *Kanner v. Globe Bottling Co.*, *supra*, 273 Cal.App.2d 559.

of the appropriate amount of attorney fees. There was no objection to the selection of appellants as the prevailing parties and this issue would not be included in the direction to redetermine the amount of the attorney fees.

Appellants' petition for review by the Supreme Court was denied July 16, 2008, S164180.