Mamikon **KARAPETIAN**, Plaintiff,

v.

**KIA MOTORS AMERICA, INC.**, Defendant.

Case No. SACV 08–00227–CJC(RNBx).

United States District Court, C.D. California, Southern Division.

Nov. 18, 2010.

Lucy Kasparian, Glendale, CA, Martin W. Anderson, Santa Ana, CA, for Plaintiff.

Anthony E. Sonnett, and Jocelyn A. Julian, Lewis, Brisbois, Bisgaard & Smith, LLP, Los Angeles, CA, for Defendant.

### ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR AN ORDER REIMBURSING PLAINTIFF'S ATTORNEY FEES, COURT COSTS, AND LITIGATION EXPENSES

CORMAC J. CARNEY, District Judge.

### INTRODUCTION

Plaintiff Mamikon Karapetian seeks an award of $127,461.73 in attorneys' fees and costs as the prevailing party under the Song–Beverly Consumer Warranty Act after reaching a settlement of his automobile lemon law claims with Defendant Kia Motors America, Inc. ("KMA") for approximately $30,000 in restitution and incidental damages. KMA objects to Mr. Karapetian receiving such a significant award, contending that the settlement he ultimately obtained was in fact essentially the same as that KMA had offered to him pursuant to Federal Rule of Civil Procedure 68 almost a year and a half earlier and prior to the time that his attorney incurred the substantial majority of the attorneys' fees he seeks. After considering the evidence presented by the parties and the arguments of their counsel, the Court concludes that Mr. Karapetian is only entitled to a modest fee and cost award of $20,857.73, which represents the attorney's fees and costs that he incurred prior to KMA's Rule 68 offer. The attorneys' fees and costs that Mr. Karapetian incurred after that date produced little, if any, benefit to him. Indeed, under both the final settlement and Rule 68 offer he received compensation for loan payments and incidental damages and KMA paid off the remainder of his loan. Thus, the attorneys' fees and costs incurred after Mr. Karapetian's rejection of KMA's Rule 68 offer were not reasonably incurred.

### BACKGROUND

After a failed attempt to reach a prelitigation settlement with KMA, Mr. Karapetian filed this suit on February 15, 2008 against KMA alleging various violations of federal and state law arising from KMA's sale of a Kia Sedona to Mr. Karapetian in February 2004.[1] In connection with the sale, Mr. Karapetian agreed to pay a total of $32,077.92 including taxes, license, and finance charges. Compl. ¶ 4. Mr. Karapetian alleged that the vehicle had various problems including a faulty check engine light, a defect that caused engine oil to enter the coolant reservoir, and defects that caused the engine to make unusual noises and vibrations. Compl. ¶ 6. According to Mr. Karapetian, these problems supported claims under 15 U.S.C. § 2310(d) and California Civil Code

---

1. Mr. Karapetian originally filed a duplicative suit in California state court, but there was no activity in that suit beyond the filing of a complaint and answer before Mr. Karapetian dismissed that suit without prejudice. Sonnett Decl. Supp. Opp'n ¶¶ 5–6, 8.

§§ 1793.2 and 1794 for (1) breach of the implied warranty of merchantability, (2) breach of the implied warranty of fitness, and (3) breach of express warranty. Compl. ¶¶ 4–23. Mr. Karapetian further alleged KMA failed to promptly repurchase the vehicle, commence repairs within a reasonable time, and complete repairs within 30 days. Compl. ¶¶ 24–37.

After Mr. Karapetian filed this suit, he and KMA began settlement negotiations. KMA alleges that it offered $40,000 in June 2008 to cover full repurchase of Mr. Karapetian's vehicle, incidental damages, and attorneys' fees. Sonnett Decl. Supp. Opp'n ¶ 10. Mr. Karapetian's counsel counter offered a settlement of $65,000 that also required KMA to pay off the remaining portion of the vehicle loan. *Id.* KMA rejected this counteroffer.

The next round of negotiations included a Federal Rule of Civil Procedure 68 offer that KMA made on September 18, 2008. Sonnett Decl. Supp. Opp'n Ex. H. In an October 2, 2008 telephone call, Mr. Karapetian's counsel stated that he had not received the September 18, 2008 Rule 68 offer. Sonnett Decl. Supp. Opp'n ¶ 12 (Mr. Karapetian's counsel stated during October 2, 2008 telephone call that he had not received the September 18, 2008 offer); Anderson Decl. Supp. Reply ¶ 13 (stating September 18, 2008 offer not served on him). KMA emailed a copy of the offer to Mr. Karapetian's counsel on October 2, 2008. Sonnett Decl. Supp. Opp'n ¶ 12. Mr. Karapetian's counsel represented that the October 2, 2008 email did not, however, revive the September 18, 2008 Rule 68 offer. Anderson Decl. Supp. Reply ¶ 14. *But see* Julian Decl. Supp. Sur–Reply ¶ 3

(stating Mr. Karapetian's counsel "never requested that [KMA] revive KMA's Rule 68 Offer and [KMA] never refused to revive the Rule 68 offer. Had [Mr. Karapetian's counsel] asked [KMA] to revive the Rule 68 offer, [KMA] would have.").

On November 12, 2008, Mr. Karapetian's counsel counter offered a settlement of $75,000 (including damages, attorneys' fees, and costs) plus loan payoff (valued at approximately $9,000–$11,000). Sonnett Decl. Supp. Opp'n Ex. J at 1. KMA rejected this counteroffer. *Id.*

KMA re-filed its Rule 68 offer on November 14, 2008. Sonnett Decl. Supp. Opp'n Ex. L. The November 14, 2008 Rule 68 offer was virtually identical to KMA's September 18, 2008 Rule 68 offer. This proposal offered "full restitution" to Mr. Karapetian including: (1) "[t]he total of the monthly payments paid by Plaintiff ... less a mileage offset of $3,940.86 and less the prior credit balance of $2,734.00," (2) reasonable incidental damages in the "sum of $2,500 ... or, at [Mr. Karapetian's] election, to be determined by proof," (3) "[p]ayment to the lien holder of the balance currently due on the lien on the" vehicle, and (4) Mr. Karapetian's "statutory costs and expenses ... including reasonable attorneys' fees in the amount determined by the Court to have been reasonably incurred by [Mr. Karapetian] in connection with the commencement and prosecution of this action to and including the date of this Offer." *Id.* at 1–2. As a condition of KMA's offer, Mr. Karapetian would "execute a general release of all claims asserted in this action against [KMA]," which was attached as an exhibit to the Rule 68 offer.[2] *Id.* at 2. Mr.

---

**2.** Mr. Karapetian's counsel has represented that the November 14, 2008 Rule 68 offer was not favorable enough and also unacceptable because it "would have required [Mr. Karapetian's counsel] to sign it and make certain representations. Because signing client settlement agreements exposes [him] to potential liability and the possibility of becoming a witness in future litigation, [he] ha[s] a policy of refusing to sign settlement related documents in litigation. Thus, [Mr. Karapetian] could never have accepted Kia's Second Rule 68 Offer." Anderson Decl. Supp. Reply ¶ 18.

Karapetian did not accept KMA's November 14, 2008 Rule 68 offer.

More than one year later, the parties finally reached a settlement on February 20, 2010. Under this settlement, KMA agreed to pay Mr. Karapetian "restitution ... by repurchase by KMA of the vehicle ... and payment by KMA of other reasonable amounts due in connection with restitution" as well as "attorney's fees, expenses, and costs reasonably incurred by [Mr. Karapetian] in connection with the commencement and prosecution of the action, to be determined by the Court," including post-settlement fees. Anderson Decl. Supp. Mot. Ex. 6 at 2. In total, KMA paid $30,038.74 in restitution and incidental damages. Anderson Decl. Supp. Reply ¶ 2 (two checks to Mr. Karapetian totaling $26,386.23 and a payment of $3,652.51 to Mr. Karapetian's lender). Mr. Karapetian now seeks $123,728.75 in attorneys' fees and $3,732.98 for other litigation costs.

## ANALYSIS

■■ California's Song–Beverly Consumer Warranty Act, Cal. Civ. Code § 1790 *et seq.*, provides that a prevailing buyer "shall be allowed by the court to recover as part of the judgment a sum equal to the aggregate amount of costs and expenses, including attorney's fees based on actual time expended, determined by the court to have been *reasonably incurred* by the buyer in connection with the commencement and prosecution of such action." Cal. Civ. Code § 1794(d) (emphasis added). The inquiry is "whether under all the circumstances of the case the amount of actual time expended and the monetary charge being made for the time expended are reasonable." *Nightingale v. Hyundai Motor Am.,* 31 Cal.App.4th 99, 104, 37 Cal.Rptr.2d 149 (1994); *see also Doppes v. Bentley Motors, Inc.,* 174 Cal. App.4th 967, 998, 94 Cal.Rptr.3d 802 (2009). "If the time expended or the monetary charge being made for the time expended are not reasonable under all the circumstances, then the court *must* take this into account and award attorney fees in a lesser amount." *Nightingale,* 31 Cal. App.4th at 104, 37 Cal.Rptr.2d 149 (emphasis added); *see also Levy v. Toyota Motor Sales, U.S.A., Inc.,* 4 Cal.App.4th 807, 815–16, 5 Cal.Rptr.2d 770 (1992) (prevailing party not necessarily entitled to all claimed attorneys' fees). The prevailing buyer, Mr. Karapetian, bears the burden of demonstrating all of the following: "the [attorneys'] fees incurred were allowable, were reasonably necessary to the conduct of the litigation, and were reasonable in amount." *Nightingale,* 31 Cal.App.4th at 104, 37 Cal. Rptr.2d 149 (quoting *Levy,* 4 Cal.App.4th at 816, 5 Cal.Rptr.2d 770) (internal quotation marks omitted). The Court retains discretion to reduce the fee award where fees were not reasonably incurred. *See, e.g., Ketchum v. Moses,* 24 Cal.4th 1122, 1132, 104 Cal.Rptr.2d 377, 17 P.3d 735 (2001) (" '[P]adding' in the form of inefficient or duplicative efforts is not subject to compensation."); *Gorman v. Tassajara Dev. Corp.,* 178 Cal.App.4th 44, 101, 100 Cal.Rptr.3d 152 (2009) ("A reduced [attorneys' fees] award might be fully justified by a general observation that an attorney overlitigated a case or submitted a padded bill or that the opposing party has stated valid objections."); *EnPalm, LCC v. Teit-*

But the Rule 68 offer simply asked Mr. Karapetian's attorney to sign to indicate Mr. Karapetian's acceptance of the offer. Sonnett Decl. Supp. Opp'n Ex. L at 4. Similarly, the general release would have merely required Mr. Karapetian's attorney to verify that "[t]he content of [the] General Release of All Claims has been reviewed by and explained to plaintiff Mamikon Karapetian and is agreed to and approved as to form and content." *Id.* at 11. The ultimate decision to settle belongs to the client, not his attorney. *See Levy v. Superior Court,* 10 Cal.4th 578, 583, 41 Cal.Rptr.2d 878, 896 P.2d 171 (1995).

*ler Family Trust,* 162 Cal.App.4th 770, 775, 75 Cal.Rptr.3d 902 (2008) (holding trial court has discretion to reduce fees awarded "to the extent they were unnecessary"); *id.* at 774 n. 4, 775, 75 Cal.Rptr.3d 902 (affirming trial court's 90% reduction of fees awarded pursuant to parties' contract where prevailing defendant's false statements unnecessarily extended the litigation such that "most of the time incurred by appellants' counsel was not reasonable").

■ Two attorneys prosecuted this action on behalf of Mr. Karapetian. These two attorneys charged hourly rates of $425.00 and $350.00. Pl.'s Mot. at 1. They have submitted evidence that they spent 170.70 hours and 150.55 hours prosecuting this action, for a total of 321.25 hours. *Id.* Accordingly, Mr. Karapetian now seeks to recover $123,728.75 in attorneys' fees. Although the hourly rates for Mr. Karapetian's counsel were reasonable, *see Gezalyan v. BMW of N. Am., LLC,* 697 F.Supp.2d 1168, 1171 (C.D.Cal.2010), Mr. Karapetian has failed to meet his burden of demonstrating that the fees attributable to litigating this case for nearly a year and a half after KMA's November 2008 Rule 68 offer were reasonably incurred.

Mr. Karapetian argues that the parties' final settlement was more favorable than KMA's November Rule 68 offer, justifying an award of more than $103,000 in fees and $3,382.98 in costs incurred between November 2008 and February 2010. He contends that the February 2010 settlement was more favorable because he (1) received more money, (2) had use of the vehicle from November 2008 until February 2010, (3) did not have to sign a general release, and (4) the settlement permitted award of post-settlement attorneys' fees. All of his arguments are unpersuasive. The material terms of the February 2010 settlement and KMA's November 2008 Rule 68 offer were essentially identical, and the additional attorneys' fees and costs were not reasonably incurred.

First, Mr. Karapetian's monetary recovery was substantially the same. Indeed, both the February 2010 settlement and KMA's November 2008 Rule 68 offer provided for full restitution and repurchase of Mr. Karapetian's vehicle. Anderson Decl. Supp. Mot. Ex. 6 at 2 (February 2010 settlement providing for "restitution to plaintiff by repurchase by KMA of the vehicle"); Sonnett Decl. Supp. Opp'n Ex. L at 1 (November 2008 Rule 68 offer providing for "full restitution ... under 15 U.S.C. § 2310 and California Code of Civil Procedure 1792"). Each further permitted Mr. Karapetian to recover incidental and consequential damages according to proof.[3] Anderson Decl. Supp. Mot. Ex. 6 at 2 (parties' February 2010 settlement included "payment by KMA of other reasonable amounts due in connection with restitution, as set forth in Civil Code § 1793.2(d)(2) [4]"); Sonnett Decl. Supp. Opp'n Ex. L at 2 (November 2008 Rule 68 offer including "[t]he sum of $2,500.00 for any reasonable incidental damages incurred by Plaintiff related to the subject vehicle or, at plaintiff's election, to be determined by proof"). Although Mr. Karapetian received more total dollars in February 2010 than he would have received under KMA's November 2008 Rule 68 offer, that is necessarily

3. Following the parties' February 2010 settlement, KMA agreed to pay Mr. Karapetian approximately $14,000 in incidental damages according to his proof.

4. When a manufacturer or representative in California makes restitution to a vehicle owner under § 1793.2(d)(2), that restitution includes "any incidental damages to which the buyer is entitled under [California Civil Code § ] 1794, including, but not limited to, reasonable repair, towing, and rental car costs actually incurred by the buyer." Cal. Civ. Code § 1793.2(d)(2)(B).

so because Mr. Karapetian continued to make payments on the car loan, incur interest, and suffer incidental damages during the approximately 15 months between November 2008 and February 2010. Mr. Karapetian has not proven that he received greater monetary compensation, in relative terms, by accepting the February 2010 settlement rather than KMA's November 2008 Rule 68 offer.

Second, the Court rejects Mr. Karapetian's argument that it should consider the February 2010 settlement as providing additional compensation because Mr. Karapetian had use of the vehicle from November 2008 until February 2010. This argument is especially disingenuous given Mr. Karapetian's core allegations in his Complaint that his vehicle was so defective, see Compl. ¶ 6 (listing defects), that it was (1) "not fit for the ordinary purposes for which such goods are used," Compl. ¶ 9, (2) "not fit for [Mr. Karapetian's] particular purpose," Compl. ¶ 16, and (3) according to Mr. Karapetian himself, "the [v]ehicle's value [was] de minimis," Compl. ¶ 10. To the extent that Mr. Karapetian has decided—after settlement—that the value of having his vehicle was more than de minimis, that benefit is very difficult to fairly quantify. Furthermore, permitting such a benefit to support a finding that Mr. Karapetian's post-offer fees were reasonably incurred would provide yet another incentive for plaintiffs to unreasonably incur greater fees and costs and draw out lemon law suits.

Third, Mr. Karapetian argues that the parties' February 2010 settlement was more favorable because KMA's November 2008 Rule 68 offer would have required him to sign a general release of claims. But avoiding the formality of signing a general release was virtually meaningless in this case. The general release contained boilerplate language covering all claims relating to the vehicle, and there is no evidence to suggest that Mr. Karapetian had any other claims that the general release would have barred. Even if he did, it is likely that the February 2010 settlement's res judicata bar on claims arising from the allegations in Mr. Karapetian's Complaint is coextensive with the general release KMA proposed.[5] Presumably that is why KMA did not insist that Mr. Karapetian execute a release as a condition of the February 2010 settlement.

Fourth, Mr. Karapetian contends that the November 2008 Rule 68 offer would have only entitled Mr. Karapetian to attorneys' fees reasonably incurred through the date of the offer. In other words, it would not have permitted Mr. Karapetian to recover reasonable attorneys' fees incurred for post-settlement work (including returning the vehicle, disbursing settlement funds to Mr. Karapetian, and dismissing the action) or post-settlement litigation over attorneys' fees (the subject of the present dispute). In contrast, the parties' February 2010 settlement does permit Mr. Karapetian to recover reasonably incurred post-settlement attorneys' fees and costs. Admittedly, that did make the February 2010 settlement slightly more favorable from Mr. Karapetian's perspective, but Mr. Karapetian grossly exaggerates the difference. Indeed, Mr. Karapetian contends that acceptance of the Rule 68 offer would have required him to compensate his counsel for approximately 25 hours of post-settlement work. Anderson Decl. Supp. Reply ¶ 11; see also Pl.'s Reply at 7 (estimating fees for that work to be $10,625). That estimate is excessive and

---

**5.** The chances are remote that the general release KMA proposed would have required Mr. Karapetian to waive tangentially related claims or agree to indemnify KMA from third party claims. Even if the release was construed in that manner, courts would be unlikely to give it that effect.

overstates the time, effort, and energy necessary to memorialize and effectuate a straightforward lemon law settlement if attorneys for both parties are acting professionally and in good faith. Very little time would have been necessary to review the general release, verify incidental damages, submit fees records, and file a form dismissal.

 In short, the February 2010 settlement's (1) lack of a general release and (2) provision permitting recovery of post-settlement fees fall far short of victories warranting a finding that Mr. Karapetian's counsel reasonably incurred $103,221 in fees and $3,382.98 in costs between November 2008 and February 2010. Making such a finding and setting such a precedent would provide too great of a perverse incentive for attorneys to unnecessarily draw out litigation in similar cases involving statutes permitting recovery of attorneys' fees. *See Haworth v. Nevada*, 56 F.3d 1048, 1052 (9th Cir.1995) ("Just because a plaintiff has a[] ... violation [of a statute permitting recovery of attorneys' fees] in her pocket does not give her a license to go to trial, run up the attorney fees and then recover them from the defendant."). It would also encourage plaintiffs to unreasonably reject Rule 68 offers or their state law equivalents when they expect to extract any further concessions in a later settlement or obtain even slightly more favorable results at trial. The Court exercises its discretion to decline to provide such incentives or reward such conduct in this case. Mr. Karapetian has satisfied his burden that his attorneys reasonably incurred $20,507.75 in attorneys' fees and $350 in costs, *see* Anderson Decl. Supp. Mot. Exs. 1–3 (fees and costs incurred prior to KMA's November 2008 Rule 68 offer), and he is entitled to an award in just that amount, no more.

## CONCLUSION

For the foregoing reasons, Mr. Karapetian's motion for an order reimbursing Mr. Karapetian's attorney fees, court costs, and litigation expenses is GRANTED IN PART. The Court awards Mr. Karapetian $20,857.73 in attorneys' fees, court costs, and litigation expenses.