Filed 12/14/23  Marriage of Wittry CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| In re the Marriage of KIMBERLY WITTRY and JARED WITTRY. | |
| KIMBERLY WITTRY,<br><br>        Appellant,<br><br>v.<br><br>JARED WITTRY,<br><br>        Respondent. | A163676<br><br>(Solano County<br>Super. Ct. No. FFL150132) |

Appellant Kimberly Wittry appeals from a judgment in the dissolution of her marriage to respondent Jared Wittry.[*]  Kimberly contends the trial court abused its discretion by pressuring her to accept Jared's proposed settlement and then penalizing her for rejecting the proposal by awarding Jared $15,000 in sanctions under Family Code section 271.[†]  She also argues that the court erred when it did not allow her to present her arguments regarding child custody and her evidence of the fair rental value of the

_____

[*] Because the parties share the same last name, we will refer to them by their first names for the sake of clarity and intend no disrespect.

[†] All undesignated statutory references are to the Family Code.

1

marital home. She further argues that the court erred in its ruling on the parties' date of separation. Finally, she contends that the court abused its discretion in determining the amount and duration of her post-dissolution spousal support. We reject those contentions and affirm.

## I. BACKGROUND

Kimberly and Jared were married in May 2005. They have three children together. During the majority of the parties' marriage, Kimberly was the children's primary caretaker.

In June 2018, Kimberly filed a petition for dissolution, listing the parties' separation date as April 1, 2018. She requested spousal support, joint legal and physical custody of the children, and child support. In his answer to the petition, Jared requested sole legal and physical custody of the children with supervised visitation for Kimberly, asserting that she had left the children in his care in February 2018.

In August 2018, the court issued temporary orders giving Jared sole legal and physical custody of the children with supervised visitation for Kimberly and requiring him to pay her spousal support at $3,841 per month. The parties later entered into a stipulation and order agreeing to continue with the court's temporary child custody and visitation orders with some modifications.

A few months later, Jared moved for a *Gavron* order[‡] and for an order for a vocational evaluation for Kimberly, as the parties disputed her earning

---

[‡] A *Gavron* warning is an order issued to the supported spouse that he or she is expected to become self-supporting. (*In re Marriage of Gavron* (1988) 203 Cal.App.3d 705; see *In re Marriage of Schmir* (2005) 134 Cal.App.4th 43, 55; § 4330, subd. (b).)

2

capacity. Although Kimberly claimed that she ran her own business, Jared argued that there was "little indication she [was] earning at all."

The court issued a *Gavron* warning to Kimberly in May 2019. The parties agreed to Jared retaining Jaye Davis as a vocational expert for an evaluation of Kimberly.

### A. *The Child Custody and Visitation Trial*

Trial on the child custody and visitation issues commenced on July 9, 2019, and concluded on August 1, 2019. After the matter was submitted, the court awarded the parties joint legal custody of the children and gave Jared primary physical custody and Kimberly parenting time on alternating weekends and after school twice a week. The court found that the "primary concerns that tip the scales the most" was Kimberly "not making the children and visitation a priority," as Jared had testified that she was constantly late for visitation and often did not exercise her parenting time.

The record indicates that after trial, despite Jared agreeing to Kimberly receiving more parenting time, she continued to show up late for visits or miss them entirely, and she had also missed a custody mediation appointment.

### B. *Settlement Conference*

Jared filed a settlement conference statement in November 2020. Kimberly, who was representing herself at that point, did not file a settlement conference statement. In his statement, Jared proposed that Kimberly receive permanent spousal support in the amount of $1,274 a month, taking into account imputed income of $4,616 a month and the other section 4320 factors. He also proposed "guideline" child support, that he buy out Kimberly's interest in the community real property, that each party take

the personal property in their possession without offset, and that the retirement accounts be divided equally.

At the settlement conference, the parties agreed to equally divide the work-place benefits and share the costs of the qualified domestic relations order. They did not reach agreement on any other issues. The court sanctioned Kimberly under California Rules of Court, rule 5.10 for her failure to file a settlement conference statement.

## C. *The Trial on the Remaining Issues*

Trial on the remaining issues—including, as relevant to this appeal, spousal support and the parties' date of separation—was to commence in January 2021, but Kimberly informed the court on the morning of trial that she was ill and could not appear. The court continued the trial to May 2021.

Prior to trial, Jared filed a declaration in which he requested that the court order Kimberly to pay him over $50,000 in attorney fees and costs as sanctions under section 271 due to her "unreasonable" conduct throughout the litigation and her "unwillingness to settle." Then, a few days before the continued trial date, Kimberly appeared at an ex parte hearing to request a further trial continuance of 90 days to allow her to obtain legal counsel. The court denied her request on the ground that she had already had over four months to seek new counsel after her last attorney withdrew from the matter.

Trial began on May 24, 2021, and concluded on June 30, 2021. The court heard testimony from Ms. Davis, Jared, and Kimberly, who represented herself during trial.

Ms. Davis testified that her appointments with Kimberly were "very difficult." Kimberly was "verbally irritated[,]" she kept "fiddling" with her phone and spent a lot of time on it, and she was almost two hours late for her first appointment. Kimberly had told Ms. Davis that she was working on a

4

business, but when Ms. Davis asked her to provide documentation of the existence of the business, she provided "only one page of random expenses" that were "mostly personal . . . ." Ms. Davis informed her that she could receive "retraining" as a teacher, which was her profession before becoming a stay-at-home parent, but Kimberly said she did not want to do that. Ms. Davis testified that there was "nothing presented to me where [Kimberly has] made any effort" to become self-supporting.

Jared testified that the parties' separation date was February 1, 2018. On that date, the parties were in Mexico. According to Jared, Kimberly kept talking to a man named Taz in the middle of the night. He testified that the "last straw" for him was when a photographer invited Kimberly to his hotel room for a party, and she told Jared that he was not invited.

Regarding spousal support and the section 4320 factors, Jared testified that Kimberly had marketable skills, as she had a four-year degree and teaching certificates in other states. According to Jared, he had been the children's primary caretaker for more than a year after Kimberly had moved out of the marital home in February 2018. He testified that the parties' standard of living during the marriage was middle class and that his monthly income was currently $19,018. When asked how Kimberly contributed to his ability to earn, Jared said that he had acquired his college degree and professional degree prior to their marriage. And when asked whether Kimberly helped "enhance" his career, he replied "[n]o."

Kimberly testified that she asked Jared for a separation in April 2018. She testified that when their first child was a few months old, they decided that she would be a stay-at-home mom. Jared worked a lot, and she was a "full-time mom . . . ." She testified that she cooked Jared dinner, that the "house was immaculate," and that she "had the kids in every activity you

5

would think of." She further testified that it would be "impossible" for Jared to have been the children's primary caretaker prior to their separation because of how much he worked.

In August 2021, the court ruled on the submitted matters. As relevant to this appeal, the court concluded that the parties' date of separation was February 1, 2018, as asserted by Jared, finding that Kimberly was "inconsistent[]" in her testimony and generally lacked credibility. The court also found sanctionable conduct "in unnecessary attorney fees and costs" on the part of Kimberly, awarding Jared $15,000 in attorney fee sanctions under section 271.

Regarding spousal support, the court made detailed findings, addressing each of the fourteen factors enumerated in section 4320. This included consideration of Kimberly's earning capacity and the fact that she "w[ould] have substantial funds" from the division of the community property. Based on the relevant circumstances, the court awarded Kimberly monthly spousal support of $2,500 for the remaining six months of 2021, with a decrease of $500 in each subsequent year until 2025, when the amount of monthly spousal support would be $500. Spousal support was to terminate in 2027.

Kimberly appeals.§

---

§ Kimberly appealed from the court's ruling one month before the court entered judgment. "The reviewing court may treat a notice of appeal filed after the superior court has announced its intended ruling, but before it has rendered judgment, as filed immediately after entry of judgment." (Cal. Rules of Court, rule 8.104(d)(2).) We exercise our discretion and construe the premature notice of appeal as filed immediately after entry of judgment.

II. DISCUSSION

Kimberly challenges the court's section 271 sanctions order as unsupported by the record. She claims that the court sanctioned her in retaliation for her refusal to accept a proposed settlement. She also contends that the court abused its discretion in determining the amount and duration of her spousal support, because it failed to adequately consider one of the mandatory section 4320 factors and "misread" some of the evidence relevant to its determination. As explained below, these contentions lack merit, and she has forfeited her remaining arguments, which concern the court's rulings on child custody, the parties' date of separation, and the fair rental value of the marital home.

## A. *Settlement, Child Custody, and Section 271 Sanctions*

Kimberly's first point in her appellate brief is not entirely clear, as she asserts what appears to be three separate arguments under a single heading. First, she contends that the court did not allow her to respond to a declaration Jared filed shortly before a January 2020 child custody review hearing, in which he alleged numerous instances where she was a no-show or was late for her allotted parenting time. Second, she argues that the court "pressured" her in chambers to accept a global settlement that she found unfair. Finally, she argues that the court sanctioned her under section 271 in retaliation for her refusal to settle because there is no support in the record for the sanctions order.

Putting aside the fact that Kimberly has violated California Rules of Court, rule 8.204(a)(1)(B) by failing to "[s]tate each point under a separate heading or subheading summarizing the point," as Jared has pointed out, she fails to support her first two contentions factually or legally. The cited evidence does not show that she attempted to respond to the allegations in

7

Jared's declaration or that the court barred her from doing so. To the contrary, the record shows that the court granted her request for a continuance of the review hearing because Jared had filed his declaration late. Nor does she support her assertion that the court pressured her to settle with citation to the record. And she fails to support her arguments with authority, citing only an unpublished case. Thus, we deem those arguments forfeited. (See *EnPalm, LLC v. Teitler* (2008) 162 Cal.App.4th 770, 775 [argument deemed waived where unsupported legally and factually].)

Regarding her contention that the court's sanctions order is unsupported by the record, Kimberly has arguably forfeited her substantial evidence argument by failing to "set forth, discuss, and analyze all the evidence on [the disputed] point, both favorable and unfavorable." (*Doe v. Roman Catholic Archbishop of Cashel & Emly* (2009) 177 Cal.App.4th 209, 218.) In any event, the trial court's findings regarding her sanctionable conduct under section 271 are supported by substantial evidence.

"Section 271 provides that a family court may impose an award of attorney fees and costs 'in the nature of a sanction' where the conduct of a party or attorney 'frustrates the policy of the law to promote settlement of litigation and, where possible, to reduce the cost of litigation by encouraging cooperation between the parties and attorneys.'" (*In re Marriage of Tharp* (2010) 188 Cal.App.4th 1295, 1316.) "Expressed another way, section 271 vests family law courts with an additional means with which to enforce this state's public policy of promoting settlement of family law litigation, while reducing its costs through mutual cooperation of clients and their counsel." (*Id.* at p. 1318.) "We review an award of attorney fees and costs under section

8

271 for abuse of discretion." (*In re Marriage of Fong* (2011) 193 Cal.App.4th 278, 291.)

In this case, the court properly based its section 271 sanctions award on Kimberly's uncooperative conduct. The court found that she acted in "bad faith" because of her failure to comply with local filing rules pertaining to trial briefs, settlement conference statements, and other pleadings, and because she arrived late to hearings and failed to prepare for hearings or follow court orders, causing delays. The court further found that she was "disruptive" during hearings and failed to participate, and she made misrepresentations to the court, failed to timely file certain documents, including Income and Expense Declarations, and attempted to communicate ex parte with the court. The court also found that she failed to comply with the *Gavron* order and to meaningfully participate in the vocational evaluation ordered by the court.

The evidence cited by Jared shows that several of these findings are supported by substantial evidence. He cites evidence that Kimberly had missed a custody mediation. He also points to evidence that she failed to file a settlement conference statement or a trial brief. Additionally, the vocational evaluator testified that Kimberly had not cooperated with the evaluation as ordered by the court and did not show that she had made any effort to become self-supporting.

We presume the trial court's other findings concerning Kimberly's uncooperative conduct is supported by substantial evidence, given her failure to address many of those findings and her selective recitation of the record. "The rule is well established that a reviewing court must presume that the record contains evidence to support every finding of fact, and an appellant who contends that some particular finding is not supported is required to set

9

forth in his brief a summary of the material evidence upon that issue.  Unless this is done, the error assigned is deemed to be waived." (*In re Marriage of Fink* (1979) 25 Cal.3d 877, 887.)  She therefore has not shown that the court abused its discretion in awarding Jared $15,000 in sanctions under section 271.

**B.    *The Parties' Date of Separation***

Kimberly next argues that the trial court abused its discretion by "misstating" the parties' date of separation.  As previously mentioned, the trial court determined that the parties' date of separation was February 1, 2018.  Kimberly contends this was error because the parties separated after Jared had received a bonus from work in March 2018, and thus, she argues, the court should have divided the bonus between them.  We conclude that Kimberly has failed to demonstrate an abuse of discretion.

Section 771 classifies property acquired "after the date of separation" as the acquiring party's separate property.  The Family Code defines " '[d]ate of separation' " to mean the "date that a complete and final break in the marital relationship has occurred, as evidenced by both of the following: [¶] (1) The spouse has expressed to the other spouse the intent to end the marriage. [¶] (2) The conduct of the spouse is consistent with the intent to end the marriage." (§ 70.)  " 'The ultimate question to be decided in determining the date of separation is whether either or both of the parties perceived the rift in their relationship as final.' " (*In re Marriage of Manfer* (2006) 144 Cal.App.4th 925, 930, italics omitted.)

"Date of separation is a factual issue to be determined by a preponderance of the evidence." (*In re Marriage of Manfer, supra*, 144 Cal.App.4th at p. 930.)  "Our review is limited to determining whether the court's factual determinations are supported by substantial evidence and

10

whether the court acted reasonably in exercising its discretion." (*In re Marriage of De Guigne* (2002) 97 Cal.App.4th 1353, 1360.)

Here, Kimberly fails to demonstrate that the trial court abused its discretion in finding that the parties' date of separation was February 1, 2018. She does not provide a summary of the evidence favorable to the court's decision, evidence that included Jared's testimony explaining why February 1, 2018 "was the last straw" for him, as previously mentioned. Nor has she offered any analysis or citations to the record to suggest the trial court erred in concluding that the parties had separated before Jared received a bonus in March 2018. The cited evidence shows only that Jared received a bonus at some unspecified time. Kimberly's failure to offer any legal argument, citation to the record, or a summary of the material evidence waives her argument that the trial court erred in determining the parties' separation date. (See *EnPalm, LLC v. Teitler, supra*, 162 Cal.App.4th at p. 775; *In re Marriage of Fink, supra*, 25 Cal.3d at p. 887 [error is deemed waived if appellant fails to provide a summary of the material evidence in his brief]; see also Cal. Rules of Court, rule 8.204(a)(1)(B) & (C) [appellant must identify points of law and error, support them by argument and, if possible, citation of authority, and provide citations to the record in support of those arguments].) Accordingly, Kimberly has failed to demonstrate an abuse of discretion. She therefore has also failed to show the court erred when it did not divide between the parties any bonus that Jared received after February 1, 2018.** (See § 771.)

_____

** During oral argument, Kimberly argued that even if the parties' date of separation was February 1, 2018, she is entitled to a share of the bonus because Jared had earned all or some of it during the parties' marriage. Although she cited *In re Marriage of Finby* (2013) 222 Cal.App.4th 977, 991 in her opening brief for the proposition that bonuses "accrued" during

11

Kimberly also asserts under the same heading that the trial court "confiscated" her trial exhibits and "refused" to allow her to present them as evidence that the fair rental value of 50% of the family home was greater than 50% of the mortgage payments. But again, she does not support her argument with authority or citation to the record. An appellant's burden to demonstrate error " 'requires more than simply stating a bare assertion that the judgment, or part of it, is erroneous and leaving it to the appellate court to figure out why; it is not the appellate court's role to construct theories or arguments that would undermine the judgment . . . .' " (*Lee v. Kim* (2019) 41 Cal.App.5th 705, 721.) We therefore treat the point as forfeited. (See *ibid.*)

## C.      *Spousal Support: Kimberly's Domestic Contributions*

Kimberly next argues that the court abused its discretion in determining the amount and duration of her post-dissolution spousal support, because it failed to adequately address one of the mandatory factors under section 4320 regarding her domestic contributions to Jared's career. We disagree.

Section 4320 sets forth fourteen factors courts must consider in determining whether to award permanent spousal support and, if so, how much and for how long. These factors include the supported spouse's "contributions to the supporting spouse's education, training, or career; the

---

marriage constitute community property, she did not develop this point further or claim prior to oral argument that Jared had earned the bonus before February 1, 2018. We therefore treat this argument as forfeited. (*People v. Thompson* (2010) 49 Cal.4th 79, 110, fn. 13 ["Because counsel failed to raise this . . . argument in her briefs, to raise it at oral argument was improper"]; *EnPalm, LLC v. Teitler*, *supra*, 162 Cal.App.4th at p. 775 [issue deemed waived where it is not supported by "argument, discussion, analysis, or citation to the record"].)

12

supporting spouse's ability to pay; the needs of each party, based on the marital standard of living; the obligations and assets of each party; the duration of the marriage; the opportunity for employment without undue interference with the children's interests; the age and health of the parties; tax consequences; the balance of hardships to the parties; the goal that the supported party be self-supporting within a reasonable period of time; and any other factors deemed just and equitable by the court." (*In re Marriage of Cheriton* (2001) 92 Cal.App.4th 269, 303–304 (*Cheriton*), superseded by statute on other grounds as stated in *In re Marriage of Morton* (2018) 27 Cal.App.5th 1025, 1049; § 4320, subds. (a)–(l).) The court may determine the appropriate weight to be given each factor, with the goal of accomplishing substantial justice for the parties. (*In re Marriage of Smith* (1990) 225 Cal.App.3d 469, 481–482.) The trial court has wide discretion in setting the amount and duration of permanent spousal support. (*Id.* at pp. 479–480.)

Kimberly's argument focuses on one of the section 4320 factors—"[t]he extent to which the supported party contributed to the attainment of an education, training, a career position, or a license by the supporting party." (§ 4320, subd. (b).) As to this factor, the trial court found that "[n]o credible evidence was presented supporting the premise that the Petitioner contributed to the Respondent's educational qualifications for his current career or position." Kimberly contends the court erred because it ignored evidence that she had contributed to Jared's "current career position."

*Cheriton, supra*, 92 Cal.App.4th 269 is instructive. There, the wife challenged the trial court's order requiring the husband to pay her $2,000 per month in permanent spousal support. (*Id.* at p. 302.) She argued that the court failed to adequately consider how her role as the children's primary caretaker contributed to the husband's career development during the

marriage. (*Id.* at p. 306.) The trial court had made specific findings that she was the primary caretaker for the children, that she did not contribute to the attainment of the husband's education because he had obtained his degree prior to marriage, and that he was already a professor at the time of the marriage. (*Ibid.*) Based on those findings, the appellate court was "not troubled by the lack of a specific finding on the question of whether and to what extent [the wife's] role as the children's primary caretaker fostered [the husband's] career." (*Ibid.*) It noted that section 4320 requires consideration of the supported party's contributions "to the attainment of an education, training, a career position, or a license by the supporting party[,]" and the trial court "impliedly determined that [the wife] did not contribute to the 'attainment' of [the husband's] 'career position' as a university professor." (*Cheriton, supra,* 92 Cal.App.4th at p. 306.)

Similar to *Cheriton*, the court in this case specifically found that Kimberly was a "stay-at-home mom" during the marriage who "was very active in her childrens' [sic] lives and school" and that she did not contribute to the attainment of Jared's education, which is supported by Jared's testimony that he obtained his degrees prior to their marriage. Although the court did not make any express findings regarding the extent to which Kimberly contributed to Jared's "attainment" of his "career position," we imply all findings necessary to support the order, given that the parties did not request a statement of decision. (See *In re Marriage of McLain* (2017) 7 Cal.App.5th 262, 270, fn. 2 ["Generally, the absence of a statement of decision means that we must conclude the lower court made all findings necessary to support its order under any theory argued"].) We can therefore infer that the trial court impliedly found that Kimberly did not contribute to the "attainment" of Jared's "career position." (§ 4320, subd. (b).) We only find

14

error if the evidence compels a finding to the contrary as a matter of law. (See *Dreyer's Grand Ice Cream, Inc. v. County of Kern* (2013) 218 Cal.App.4th 828, 838 [" 'where the issue on appeal turns on a failure of proof at trial, the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law' "]; Evid. Code, § 500.)

On that point, Kimberly contends that her testimony showed that she contributed to Jared's career development and was credible and "without contradiction." However, the cited testimony is from the parties' child custody trial, which had concluded almost two years prior to the trial on spousal support and other issues. It is unclear whether Kimberly presented this evidence at the second trial and whether she even raised the issue of her contributions to Jared's career advancement at that trial, as she did not file a trial brief, and she does not cite to any portion of the record showing she testified on those matters or sought to admit her prior testimony from the child custody trial. It would be unfair to both the trial court and to Jared "to reverse a judgment on grounds that the opposing party did not have an opportunity to argue and the trial court did not have an opportunity to consider." (*JRS Products, Inc. v. Matsushita Electric Corp. of America* (2004) 115 Cal.App.4th 168, 178; see also *In re Marriage of Diamond* (2021) 72 Cal.App.5th 595, 603 ["Given that the court . . . expressly considered the three applicable factors raised by husband, we find the trial court did not abuse its discretion when it did not articulate its consideration of any other factors in its statement of decision"].)

Moreover, even assuming the cited testimony from the prior trial was properly before the trial court, the court was free to reject that testimony. Credibility determinations are the " ' "exclusive province of the [trier of fact] . . ." ' " (*Oldham v. Kizer* (1991) 235 Cal.App.3d 1046, 1065.) "[W]here

15

uncontradicted testimony has been rejected by the trial court, it 'cannot be credited on appeal unless, in view of the whole record, it is clear, positive, and of such a nature that it cannot rationally be disbelieved.' " (*Adoption of Arthur M.* (2007) 149 Cal.App.4th 704, 717.)  We defer to the trial court's credibility determinations about Kimberly's testimony.  Any testimony by Kimberly regarding her contributions to Jared's professional or career advancement was contradicted by Jared's testimony that she did not "enhance" his career, and her cited testimony was not clear and positive as to whether his career advanced after she became the children's primary caretaker.

We acknowledge that it is undisputed that Kimberly was the children's primary caretaker for much of the parties' marriage.  The trial court recognized this fact when considering another section 4320 factor—the extent to which the supported spouse's earning capacity is impaired by periods of unemployment that were incurred during the marriage to permit the supported spouse to devote time to domestic duties—finding that "[d]uring the parties' marriage, [Kimberly] was a stay-at-home mom who was very active in her childrens' [sic] lives and school."  But Kimberly has not pointed to any evidence in the record that would compel a conclusion as a matter of law that she made substantial contributions to Jared's "attainment" of a "career position."  (§ 4320, subd. (b).)

**D.**     ***Spousal Support: Kimberly's Efforts to Become Self-Supporting***

Two of Kimberly's remaining arguments challenge the trial court's findings regarding her efforts to obtain employment.  We consider and reject each in turn.

Section 4320, subdivision (a) requires that in awarding spousal support, the court consider the extent to which the supported party possesses,

16

or may come to possess, marketable employment skills sufficient to achieve the marital standard of living. Section 4320, subdivision (l) directs that the court also consider "[t]he goal that the supported party shall be self-supporting within a reasonable period of time." A court may issue a *Gavron* warning to the supported spouse that he or she is expected to become self-supporting. (*In re Marriage of Schmir, supra*, 134 Cal.App.4th at p. 55; see § 4330, subd. (b) ["When making an order for spousal support, the court may advise the recipient of support that he or she should make reasonable efforts to assist in providing for their support needs."].)

In this case, in August 2018, the trial court ordered Jared to pay Kimberly $3,841 a month in temporary spousal support. The court then issued a *Gavron* warning to Kimberly in May 2019 and ordered her to undergo a vocational evaluation. Over two years later, in its final ruling, the court found that Kimberly had "repelled" the efforts of the vocational evaluator, ignored the court's orders, and had "made no material efforts to secure meaningful employment . . . ." Additionally, the court found that because she failed to participate in the vocational evaluation, it was limited to considering her past employment positions rather than potentially "allocat[ing] community resources to retraining for new careers identified during the professional evaluation." The court found that she had a four-year college degree and previously held a teaching credential in other states, and that there was no evidence that she would not qualify for a California teaching credential.

Kimberly presents two arguments that the trial court "misread" the evidence relevant to her efforts to become self-supporting. Both lack merit. First, she contends that the trial court erroneously "claimed there was no evidence of [her] working in the three-plus years of separation." She points

17

out that she informed Ms. Davis, the vocational evaluator, that she was working on opening a general store or gift shop, and that Ms. Davis "inexplicably" claimed that there was no evidence the shop existed, "apparently because [Kimberly] did not supply documentation." Although Kimberly's argument is unclear here, she appears to contend that because the court found that she had a four-year degree and a teaching license even though no documentation was presented to support those findings, the court's adoption of Ms. Davis's assertion regarding the doubtful or unverified existence of Kimberly's business based on lack of documentation was "inconsistent."

Kimberly misconstrues the substantial evidence standard of review. So long as there is *any* substantial evidence to support the trial court's findings of fact, even if contradicted, we must affirm. (See *Schmidt v. Superior Court* (2020) 44 Cal.App.5th 570, 582.) " 'Stated another way, when there is substantial evidence in support of the trial court's decision, the reviewing court has *no power to substitute its deductions*.' " (*Rupf v. Yan* (2000) 85 Cal.App.4th 411, 429, fn. 5*,* italics omitted)[††]

Here, there was substantial evidence supporting the trial court's findings regarding Kimberly's ability and efforts to become self-supporting. The trial court's findings that she had a four-year degree and a teaching license were supported by Jared's testimony on those matters. Likewise, the trial court's findings concerning her lack of effort to become self-supporting

---

[††] The case Kimberly relies on as support for her argument is inapposite, as it concerns one party's evidentiary objections to the evidence of another. (See *Wang v. Fang* (2021) 59 Cal.App.5th 907, 916, fn. 9.) She does not contend that she objected to any of the evidence regarding her efforts to become self-supporting.

18

were supported by Ms. Davis's testimony. Ms. Davis testified that she met with Kimberly almost two years after the parties' separation for a vocational evaluation, and "[t]here was nothing [Kimberly] presented to me where she's made any effort [to become self-supporting]." According to Ms. Davis, Kimberly had told her that she (Kimberly) started a business in 2018. Ms. Davis requested several documents from Kimberly regarding the business, including a copy of the lease agreement, a profit and loss statement, and the marketing plan. Yet Kimberly provided "only one page of random expenses" that were "mostly personal . . . ." Considering that Kimberly should have been able to produce some documentation of the existence and operation of a business she claimed to have started the prior year, it was reasonable for the trial court to infer from Ms. Davis's testimony that Kimberly had made little, if any, effort to establish her business. We must indulge all reasonable inferences in support of the judgment. (*Leung v. Verdugo Hills Hospital* (2012) 55 Cal.4th 291, 308.)

Kimberly next contends that the trial court erroneously concluded that she could have "immediately" secured a job as a teacher, because Ms. Davis and the court did not consider certain factors that would make it difficult to obtain employment, including the COVID-19 pandemic and the length and complexity of the interview process.‡‡

---

‡‡ Kimberly further points out that subdivision (l) of section 4320 provides that a "reasonable period of time" for a spouse to become self-supporting is generally half the length of the marriage. However, by its express terms, that subdivision does not apply in cases involving marriages of long duration. (§ 4320, subd. (l).) Section 4336 defines a marriage of long duration as a marriage of 10 years or more. The parties here had a marriage of long duration. Section 4320, subdivision (l), therefore, is inapplicable.

19

This mischaracterizes the record, however, because there is no indication the trial court concluded that Kimberly should have been able to "immediately" secure employment as a teacher.  Rather, the court found that despite issuing a *Gavron* warning to Kimberly over two years previously, she had made "no material efforts to secure meaningful employment . . . ."  (See *In re Marriage of Heistermann* (1991) 234 Cal.App.3d 1195, 1204 ["When evidence exists that the party to be supported has unreasonably delayed or refused to seek employment consistent with his/her ability, that factor may be taken into consideration in fixing the amount of support in the first instance or in modification proceedings"]; *In re Marriage of Mason* (1979) 93 Cal.App.3d 215, 221 [trial court did not abuse its discretion in denying wife spousal support where she was a credentialed teacher and had not " 'exercised due diligence' " in seeking employment].)  By the time of trial, Jared had been paying her monthly spousal support for almost three years.  Kimberly does not cite any evidence in the record supporting an inference that it was difficult for her to secure a teaching position or any other employment during that time.  Notwithstanding her failure to make reasonable efforts to become self-supporting, the court awarded her spousal support for another five years, albeit in a lesser amount.

Under the circumstances we have described above and given that Kimberly does not challenge the court's other section 4320 findings except as we have already discussed, we cannot say the trial court's spousal support decision was an abuse of discretion.

### E.    *Spousal Support: Standard of Living*

Finally, citing *In re Marriage of Andreen* (1978) 76 Cal.App.3d 667 (*Andreen*), Kimberly maintains that it is an abuse of discretion to order

20

support in an amount that leaves the supported spouse with a significantly lower standard of living than the supporting spouse.§§

In *Andreen*, the Court of Appeal found that the trial court had abused its discretion in awarding the wife $500 per month for five years and $1 per month for the next five years, with automatic termination after 10 years. (*Id.* at p. 671.) The duration of the marriage was 27 years and the parties had an upper middle class lifestyle. (*Ibid.*) The *Andreen* court reasoned that the difference in post-separation income meant the difference between poverty for the wife and relative comfort for the husband and assumed that the wife, who was then 50 years old, would reenter the job market and earn enough to afford a higher standard of living, even though her expected future income would only be $500 per month. (*Id.* at pp. 671–672.) The wife also had no assets to supplement her earnings. (*Ibid.*)

*Andreen* is distinguishable, as in that case there was no discussion of community debt and assets. Here, in comparison, the trial court considered that Jared would have a "considerably higher debt load" after purchasing Kimberly's share of the community residence and would have a "substantially higher mortgage . . . ." The court also found that his ability to pay spousal support would be "hindered" by his "almost exclusive support" of the parties' children. And, unlike the wife in *Andreen*, Kimberly would have "substantial

§§ Kimberly also cites *In re Marriage of Ficke* (2013) 217 Cal.App.4th 10 for the proposition that a court cannot impute income to a party "in a manner that leaves less money available for a child's expenses" because it is "detrimental to that child's best interest." However, the *Ficke* court's conclusion that the imputation of income to one parent must benefit the children concerned the trial court's child support order. (*Id.* at p. 13.) Kimberly presents no cogent argument that the trial court erred in imputing income to her for purposes of child support.

funds" to augment her spousal support as a result of Jared's purchase of her interest in the community real property, and would have an equal share of his workplace benefits, "which were substantial." We therefore find no abuse of discretion.

### III.   DISPOSITION

The judgment is affirmed. Respondent Jared Wittry shall recover his costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1) & (2).)

HUMES, P.J.

WE CONCUR:


MARGULIES, J.***

BANKE, J.


A163676N

_____

*** Retired Associate Justice of the Court of Appeal, First Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.